## Eves, Appellant, *v.* Zoning Board of Adjustment.

Argued April 20, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and EAGEN, JJ.

*Thomas E. Waters,* with him *Waters, Cooper & Gallager,* and *Schubert and Schubert,* for protestants, appellants.

*Thomas J. Timoney,* and *Foulke, Knight & Porter,* for Township, appellee.

*Knox Henderson,* with him *Charles H. Welles, 3rd,* and *Henderson, Wetherill & O'Hey,* and *Welles & Mackie,* for applicant, appellee.

OPINION BY MR. JUSTICE COHEN, September 26, 1960:

These appeals, involving specifically the validity of two ordinances which amend respectively the general zoning ordinance and the zoning map of Lower Gwynedd Township, present the problem of the validity of a method of zoning aptly termed by the appellants as "flexible selective zoning."

On April 28, 1958 the Board of Supervisors of Lower Gwynedd Township adopted Ordinance 28 which

officially amended the General Zoning Ordinance of the township to provide for the new zoning district known as "F-1" Limited Industrial District. This ordinance sets forth in detail the requirements, conditions and restrictive uses for an "F-1" classification, including the requirements that any proposed development be constructed in accordance with an overall plan; that any plan shall be designed as a single architectural scheme with appropriate common landscaping and shall provide a minimum size of 25 acres; that adequate parking space shall be provided for all employees and visitor's vehicles; that parking, loading or service areas used by motor vehicles shall be located within the lot lines of Limited Industrial District, and shall be physically separated from the public streets by a buffer strip; that no building or other permanent structure, nor parking lot, shall be located within 200 feet of a public street, right-of-way, or property line; and that the area of land occupied by the buildings shall not exceed 10% of each site within the Limited Industrial District. The ordinance reserves the right in the board of supervisors to prescribe particular requirements or any further reasonable conditions deemed appropriate with respect to the suitability of the Limited Industrial District in the neighborhood.

Ordinance 28, however, does not itself delineate the boundaries of those specific areas which are to be classified as "F-1" districts. Instead, the ordinance outlines a procedure whereby anyone may submit to the board an application requesting that his land be rezoned to "F-1" limited industrial, together with plans showing the nature of the industry the applicant wishes to establish and the conformity of any proposed construction with the requirements of the district as enumerated in the ordinance. The supervisors must in turn refer the apllication and plans to the Planning Commission of Lower Gwynedd Township, which is to

review them and then return them to the supervisors accompanied by its recommendations within 45 days. The board of supervisors must then hold public hearings and finally decide whether or not to reject or approve the application and accordingly amend the zoning map. The ordinance finally provides that should any successful applicant fail to undertake substantial construction of any proposed buildings within 18 months after the rezoning, or after the issuance of a permit for an area previously zoned "F-1" Limited Industrial District, the area is to revert to its former zoning classification.

Pursuant to the terms of Ordinance 28, on September 11, 1958, the Moore Construction Company, a Pennsylvania corporation desiring to construct an industrial plant and a sewage treatment plant in Lower Gwynedd Township, applied for a rezoning of a 103 acre tract of land known as the "Hardwick Tract" from "A" residential to "F-1" Limited Industrial. A public hearing was held by the supervisors to consider the rezoning on September 20, 1958, at which time a petition signed by 300 residents, all property owners, who opposed the change, was filed. On January 5, 1959, the supervisors adopted Ordinance 34 which rezoned the area in question to the requested "F-1" classification (although it reduced the area rezoned from 103 acres to 86 acres). On January 14, 1959, a certificate of conformity (building permit) was issued to the Moore Products Company. Schuyler Eves, a resident of the township, and the Sisters of Mercy appealed to the zoning board, challenging the validity of the two ordinances on the grounds that they were unconstitutional and that they failed to conform to the enabling legislation. Sustaining the validity of the ordinances, the board dismissed the appeal. The Court of Common Pleas of Montgomery County affirmed and these appeals followed.

The authority of a municipality to enact zoning legislation must be strictly construed. "Any fair, reasonable doubt as to the existence of power is resolved by the courts against its existence in the corporation, and therefore denied." *Kline v. Harrisburg,* 362 Pa. 438, 443, 68 A. 2d 182 (1949). Appellants' principle contention is that the zoning scheme as contemplated by ordinances 28 and 34 fails to comport with the same enabling legislation from which the township derives its power to zone. After having thoroughly examined the relevant portions of that statute, we are in complete accord.

"Zoning is the legislative division of a community into areas in each of which only certain designated uses of land are permitted so that a community may develop in an orderly manner in accordance with a comprehensive plan." *Best v. Zoning Board of Adjustment,* 393 Pa. 106, 110, 141 A. 2d 606 (1958). The zoning regulations of a second class township, by legislative edict, must be the implementation of such a comprehensive plan.[1] Just what the precise attributes of a comprehensive plan must be, or the extent to which the plan must approach a development plan for the township formulated by a planning commission should one exist[2] is not now before us. See Harr, In Accordance With a Comprehensive Plan, 68 Harv. L. Rev. 1154 (1955); *Kozesnik v. Township of Montgomery,* 24 N.J.

[1] The Second Class Township Code, Act of May 1, 1933, P. L. 103, art. XX, §2003, as amended, 53 PS §67003.

[2] The Second Class Township Code, supra, note 1, at §§2051-2057, 53 PS §§67051-67057, provides for the creation and implementation of a Township Planning Commission. The Commission is charged thereunder to "prepare and adopt a plan of development for the township." §2053. The Township of Lower Gwynedd has a planning commission, although the extent to which they have prepared a development plan for the township is unclear.

154, 131 A. 2d 1 (1957). For present purposes, it is only important to point out that the focus of any plan is land use, and the considerations in the formulation of a plan for the orderly development of a community must be made with regard thereto. This positive focus is thrust upon the township supervisors by the enabling legislation itself, for their "purpose in view" in fulfilling their zoning functions must be to enact regulations ". . . designed to lessen congestion in the roads and highways; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue congestion of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality." Second Class Township Code, supra, §2003, 53 PS §67003. And since any zoning ordinance must be enacted in accordance with the comprehensive plan, the plan itself, embodying resolutions of land use and restrictions, must have been at the point of enactment a final formulation.

The role of the township supervisors in the field of zoning, as contemplated by the enabling legislation, emerges quite clearly upon consideration of the powers granted the supervisors and the duties they are bound to perform. Their duty is to implement the comprehensive plan by enacting zoning regulations in accordance therewith. Section 2003, 53 PS §67003. They are to shape the land uses "into districts of such number, shape and area as may be deemed best suited to carry out the purpose of this article. . . .," Section 2002, 53

PS §67002, which "purpose in view" is set out above in Section 2003. They may regulate or restrict "the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land" within any district, and may regulate one district differently from the next, but all "such regulations shall be uniform for each class or kind of buildings throughout each district. . . ." Section 2002, 53 PS §67002. All such regulations are to be embodied initially in a general zoning ordinance for the township, which may be subsequently amended, supplemented or repealed by the supervisors as conditions require, Section 2004, 53 PS §67004, although again such alterations must be "in accordance with a comprehensive plan."

The zoning scheme as outlined by Ordinances 28 and 34 is at variance with these legislative directives for second class townships in two objectionable ways: (1) The ordinances were not enacted "in accordance with a comprehensive plan" and (2) they devolve upon the township supervisors' duties quite beyond those duties outlined for them in the enabling legislation. Accordingly, the ordinances are invalid and the certificates of conformity (building permits) were improperly issued.

The adoption of a procedure whereby it is decided which areas of land will eventually be zoned "F-1" Limited Industrial Districts on a case by case basis patently admits that at the point of enactment of Ordinance 28 there was no orderly plan of particular land use for the community. Final determination under such a scheme would expressly await solicitation by individual landowners, thus making the planned land use of the community dependent upon its development. In other words, the development itself would become the plan, which is manifestly the antithesis of zoning "in accordance with a comprehensive plan."

Several secondary evils of such a scheme are cogently advanced by counsel for the appellants. It would pro-

duce situations in which the personal predilections of the supervisors or the affluence or political power of the applicant would have a greater part in determining rezoning applications than the suitability of the land for a particular use from an overall community point of view. Further, while it may not be readily apparent with a minimum acreage requirement of 25 acres, "flexible selective zoning" carries evils akin to "spot zoning," for in theory it allows piecemeal placement of relatively small acreage areas in differently zoned districts. Finally, because of the absence of a simultaneous delineation of the boundaries of the new "F-1" district, no notice of the true nature of his vicinity or its limitations is afforded the property owner or the prospective property owner. While it is undoubtedly true that a property owner has no vested interest in an existing zoning map and, accordingly, is always subject to the possibility of a rezoning without notice, the zoning ordinance and its accompanying zoning maps should nevertheless at any given time reflect the current planned use of the community's land so as to afford as much notice as possible.

Appellees vigorously contend that a comprehensive plan does exist for the Township of Lower Gwynedd and is set forth in the record. Essentially, appellees argue, the plan contemplates a "greenbelt" township predominately residential in character with a certain amount of compatible non-residential occupancy consisting of shopping centers, research and engineering centers and limited industrial uses. It also contemplates that these non-residential uses shall be strictly controlled as to setback, building area, noise, smoke, sewage disposal, etc., and that the means of such control shall be vested in the supervisors through strict ordinances of general application such as Ordinance 28, supra, setting up the requirements and limitations on limited industrial uses. In turn, these tools of control

and minimum standards are to be the polestars (along with other factors, such as the proximity of through highways, availability of adequate streams for affluent disposal, etc.), in any further consideration to be given by the planning commission and the supervisors to applications for specific locations or areas. By adopting this approach, the appellees have confused comprehensive planning with a comprehensive plan. The foregoing are certainly the rudiments and fundamentals which enter into the promulgation of a planned zoning scheme for the township. They are, however, only the most preliminary and basic considerations from which the ultimate decision of selective land uses are to be made. Until such time, no final formulation exists which satisfies the "comprehensive plan" requirement within the meaning of the enabling legislation.

As to the second objection, the township supervisors have gone beyond their function of implementing a comprehensive plan with zoning regulations: they are to analyze on a case by case basis for rezoning purposes individual applications and accompanying technical plans for structure and development to determine their suitability and compliance with the standards they themselves established in the ordinance.

In the enabling legislation, only the specialized township board of adjustment was empowered to permit deviations from the prevailing zoning regulations on a case by case basis, and then only by means of two detailed procedures—variances and special exceptions. §2007, 53 PS §67007. To obtain either, a petitioner must follow a system specifically devised to give certain protection to any affected property owners. To obtain a variance, a petitioner must convince the board of adjustment that "owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and . . . that the spirit of the ordinance shall be observed and substan-

tial justice done." Section 2007, 53 PS §67007. The board's determination is then subject to careful review by our courts to assure that in exercising its discretion in these matters the board of adjustment has adhered to the statutory standards. And in reviewing such matters, this Court has been quite demanding. See, e.g., *Luciany v. Zoning Board of Adjustment*, 399 Pa. 176, 159 A. 2d 701 (1960); *Springfield Township Zoning Case*, 399 Pa. 53, 159 A. 2d 684 (1960). Those who protest against the variance are allowed to resist any change both before the board and in the courts. Section 2007, 53 PS §67007.

Special exceptions are handled somewhat differently, but similar safeguards are still provided. In planning the original comprehensive ordinance, the supervisors may anticipate that certain special uses for particular districts may become desirable, even though, to some extent, they could be in derogation of the character of the district. The ordinance will then provide that an exceptional use may exist within a particular district if the board of adjustment determines its availability. Such uses are thus made available as a privilege, assuming that the requisite facts and conditions detailed in the ordinance are found to exist. See *Devereux Foundation, Inc., Zoning Case*, 351 Pa. 478, 41 A. 2d 744 (1945). Again, there is scrutinizing court review to assure that the board has not overstepped its boundaries of prudent discretion. See, e.g., *Kotzin v. Plymouth Township Zoning Board of Adjustment*, 395 Pa. 125, 149 A. 2d 116 (1959). Importantly, all property owners are put on notice of the possibility of an exceptional use within their district because such use is set out originally as part of the district's scheme in the ordinance.

Under the "flexible selective zoning" scheme here under attack, changes in the prevailing zoning regu-

lations are to be made on a case by case basis, not, however, by a specialized body such as the zoning board of adjustment, but by the legislative body, without rigid statutory standards and without any scintilla of notice of potential change as in the case of special exceptions. The standard review by the courts, as indeed the appellees argue we should adopt herein, would be nothing more than to assure ourselves that each legislative act of amending the zoning map by the township supervisors was not "arbitrary, capricious, or unreasonable." If the legislature contemplated such a novel scheme of zoning, withdrawing as it does a close standard of court review in the very delicate area of protecting property rights, and shifting as it does the focus from planned land use to individual solicitation, we are convinced it would have said so in more clear and exact terms than are found anywhere in the enabling legislation.

Order reversed.

———

CONCURRING OPINION BY MR. JUSTICE BELL:

I agree with nearly all of Justice COHEN'S opinion. However, The Second Class Township Code appears in some matters to be a hodge-podge which apparently contains authority or directions to be all things to all men. This is particularly so under §2003 (Act of July 10, 1947, P. L. 1481, §47). The Act seemingly contains inconsistent or conflicting provisions which produce ambiguity and confusion and raise serious doubts as to the validity and/or constitutionality of some of its provisions.

For these reasons I wish it clearly understood that neither the validity nor the Constitutionality of Article XX, §2003 of the Code have been approved or decided in this case.