JOHN M. SHERIDAN ET AL. *v*. PLANNING BOARD OF THE
CITY OF STAMFORD ET AL.

SYLVIA DOWLING ET AL. *v*. PLANNING BOARD OF THE
CITY OF STAMFORD ET AL.

RICHARD S. CREEDON ET AL. *v*. BOARD OF
REPRESENTATIVES OF THE CITY
OF STAMFORD ET AL.

JOHN B. DOWLING ET AL. *v*. ZONING BOARD OF THE
CITY OF STAMFORD ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

1

2

Argued November 5—decided December 23, 1969

*Julius B. Kuriansky,* for the appellants (plaintiffs in the fourth case) and for the appellants-appellees (plaintiffs in the first, second and third cases).

*Melvin M. Dichter* and *Gordon R. Paterson,* for the appellee (defendant Donahue in the fourth case) and for the appellees-appellants (defendant Donahue

et al. in the first, second and third cases); with them also were *Theodore Godlin*, assistant corporation counsel, and, on the brief, *Paul D. Shapero*, corporation counsel, for the appellee (named defendant in the fourth case) and for the appellee-appellant (named defendant in the first, second and third cases).

THIM, J. These four appeals were tried together in the Court of Common Pleas and arise from essentially one transaction. They all involve the same piece of property, and the factual basis of the four cases is sufficiently similar to permit their disposition in one opinion.

On July 13, 1965, Alphonsus J. Donahue, Jr., as trustee, entered into a contract to purchase a tract of land containing approximately 120 acres owned by C. Russell Feldmann and located in the city of Stamford. At the time of the contract the property was classified as "Residential" on the Stamford master plan and zoning map, except for a small portion designated as "Public and Semi-Public" on the master plan. It was Donahue's intention to obtain a change in the master plan and zoning map so that slighty more than half of the tract could be used for industrial purposes.

With the exception of certain provisions contained in chapters 124 and 126 of the General Statutes, which are discussed elsewhere in this opinion, planning and zoning in Stamford are governed by 26 Spec. Laws 1228, No. 619, hereinafter referred to as the Stamford charter (1953), rather than by the General Statutes. Under § 552 of the Stamford charter, the zoning map may not be amended by the zoning board to permit any use which is contrary to the use established for the area in question by the

master plan. 26 Spec. Laws 1234, No. 619 § 552. Thus, since the Feldmann property was primarily classified as "Residential" on the master plan, it was incumbent on Donahue to petition the planning board for a change in the master plan before applying to the zoning board for a change of zone. See *Burke* v. *Board of Representatives,* 148 Conn. 33, 35, 166 A.2d 849.

On February 17, 1966, Donahue applied to the planning board to make two changes in the master plan. The first change requested concerned the creation of an equivalent or component zoning district to be known as "IP-D Industrial Park Designed District." To bridge the gap between planning and zoning, the Stamford master plan provides as part of the legend which appears on the face of the map a column designated "Equivalent or Component Zoning District." This column is part of the definition of the land use category provided on the master plan. Prior to the application, one of the land use categories listed on the master plan was entitled "Designed Commercial Districts or Industrial Parks." The equivalent or component zoning district, however, was then limited to "Designed Commercial" and "Designed Industrial" without reference to "Park." These latter two districts had been adopted by the zoning board and incorporated into the zoning regulations. Donahue contended therefore that under § 553 of the Stamford charter (26 Spec. Laws 1236) the zoning regulations could not be amended until the master plan first provided for an equivalent or component zone which made specific reference to an "Industrial Park." The proposed change would provide a zoning counterpart to the planning use category on the master plan entitled "Designed Commercial Districts or Industrial

Parks." The petition to create the new land use category was granted by the planning board on May 10, 1966, and is the subject of the plaintiffs' appeal in the Sheridan case.

The second change requested on February 17, 1966, petitioned the planning board to apply the new land use category specifically to the property in question on the master plan. On May 10, 1966, the planning board granted this latter portion of the application, to the extent of 65.7 acres, and this action is the subject of the plaintiffs' appeal in the Sylvia Dowling case.

After the two changes were made by the planning board, as discussed above, the Feldmann tract could still not be used for industrial purposes since the Stamford planning board has no power to amend existing zone boundaries. *Rosenberg* v. *Planning Board,* 155 Conn. 636, 638, 236 A.2d 895. Thus, on June 1, 1966, Donahue applied to the zoning board to amend the zoning regulations so as to conform to the master plan by incorporating a new district called the "IP-D Designed Industrial Park District." On September 21, 1966, the zoning board granted the application, and its decision was referred to the board of representatives of the city of Stamford pursuant to § 553.2 of the Stamford charter. 26 Spec. Laws 1236, No. 619 § 553.2. On December 5, 1966, the board of representatives refused to reject the creation of the new district in the zoning regulations, thereby approving the action of the zoning board, and its approval is the basis for the plaintiffs' appeal in the Creedon case.

The final step was to petition the zoning board to amend the zoning map to conform to the master plan by specifically applying the new classification to the property in question. On October 19, 1966, the zoning

board granted such an application by changing approximately sixty-five acres of the Feldmann tract from "One Family Residence District" to the "IP-D Designed Industrial Park District," and this action is the subject of the plaintiffs' appeal in the John Dowling case.

In addition to these four appeals there were cross appeals by the defendants in the cases of Sheridan, Sylvia Dowling and Creedon. These appeals, when relevant, will be discussed in later portions of this opinion.

## I

Prior to argument before this court, the defendants, pursuant to § 697 of the Practice Book, filed a motion to dismiss the Sheridan and Sylvia Dowling appeals for lack of jurisdiction. Although no such motion was made to the Court of Common Pleas, the rule states that it may be made at any time. Maltbie, Conn. App. Proc. § 273. Failure to raise the motion before the trial court has no effect on our duty to order that court to dismiss the case if it appears that it too is without jurisdiction. *Foss* v. *Foss,* 105 Conn. 502, 512, 136 A. 98.

As discussed above, the Sheridan and Sylvia Dowling appeals are from actions taken by the Stamford planning board in amending the master plan. Under § 529 of the Stamford charter (26 Spec. Laws 1233, No. 619 § 529), appeals are permitted to the Court of Common Pleas from decisions affecting the master plan. See *Josephson* v. *Planning Board,* 151 Conn. 489, 199 A.2d 690. General Statutes § 8-30a, effective October 1, 1965, provides, however, that appeals from planning commissions and other final planning authorities of any municipality shall be governed by §§ 8-28 and 8-30 of the

General Statutes. Furthermore, § 8-30a applies "whether or not the charter of such municipality or the special act establishing planning in such municipality contains a provision giving a right of appeal from planning commissions, and any provision of any special act, inconsistent with the provisions of . . . [§§ 8-28 and 8-30], is repealed." The intent of the legislature, as evidenced by the language of § 8-30a, was to unify the right of appeal from any planning board by limiting such right or rights to those provided by §§ 8-28 and 8-30. Since the rights of appeal of the plaintiffs in the Sheridan and Sylvia Dowling cases, if any, arose subsequent to the effective date of § 8-30a, they are to be tested by §§ 8-28 and 8-30 rather than by § 529 of the Stamford charter. 26 Spec. Laws 1233, No. 619 § 529.

Section 8-30 of the General Statutes permits appeals from actions of planning boards taken under § 8-29, which are limited to designation of certain municipal improvements such as plans of proposed highways and sidewalks, and assessments therefor. Authority to amend the master plan, however, is provided by § 8-23 of the General Statutes (§ 522.2 of the Stamford charter [26 Spec. Laws 1229, No. 619 § 522.2] in the instant appeals), and no broad right of appeal from such amendments is granted by § 8-30. If such appeals are permitted, they must be authorized by § 8-28.

Section 8-28 at first glance appears to give a right to appeal any official action of a planning board except those provided for under § 8-30. But a careful reading of the entire section, together with § 8-26, referred to therein, and the cases arising under the section, leads to the conclusion that the only action of a planning commission which is appealable under § 8-28 is the approval or denial of subdivision plans.

Such a limited interpretation of § 8-28 is required in the context of the powers of planning boards. A master plan is controlling only as to municipal improvements, appealable under § 8-30, and as to the regulation of subdivisions of land, appealable under § 8-28. See *Levinsky* v. *Zoning Commission,* 144 Conn. 117, 123, 127 A.2d 822; "The Connecticut Law of Zoning (Part A)," 41 Conn. B.J. 262, 267. The master plan does not control the zoning board in its enactment of zoning regulations but rather is merely advisory. Ibid.

Even under Stamford's charter, where the recommendation is more than advisory because the zoning board cannot amend the zoning map in a manner inconsistent with the master plan, the planning board does not legislate. "It has no power to make, amend or repeal existing zoning regulations or zone boundaries." *Rosenberg* v. *Planning Board,* 155 Conn. 636, 639, 236 A.2d 895. The Stamford zoning board may, if it so chooses, ignore the recommendations of the master plan and refuse to amend the zoning map. As in the case of any other planning commission, the Stamford planning board has unilateral power only while acting on subdivision plans and in the designation of and assessments for municipal improvements. 26 Spec. Laws 1228, No. 619 § 520; see, e.g., General Statutes §§ 8-24, 8-25.

In summary, only two acts of a planning board are binding without further action by a zoning commission or other municipal agency: action on a subdivision plan, and designation of and assessments for municipal improvements. Section 8-30 provides for appeals from designation of municipal improvements and assessments therefor. We hold that § 8-28 must be interpreted as permitting appeals solely from actions taken on subdivision applica-

tions. To hold otherwise would be to permit appeals from actions of a planning board which are not binding on anyone, and which are, even in Stamford's case, only a preliminary step in the creation of a new and binding use by the zoning board.

Since §§ 8-28 and 8-30 do not provide for appeals from actions of planning commissions which affect the master plan (except for designation of municipal improvements) and since § 8-30a has repealed the inconsistent language in the Stamford charter, there is no statutory authorization for the Sheridan and Sylvia Dowling appeals. "Appeals to the courts from administrative officers or boards exist only under statutory authority, and, unless a statute provides for them, courts are without jurisdiction to entertain them." *Long* v. *Zoning Commission,* 133 Conn. 248, 252, 50 A.2d 172; Maltbie, Conn. App. Proc. § 1. When, as in the Sheridan and Sylvia Dowling cases, the Court of Common Pleas is without jurisdiction to entertain an appeal from a decision of an administrative board since no such right of appeal is provided by statute, this court is without jurisdiction to consider an appeal from the decision of the Court of Common Pleas even though the jurisdictional deficiency was not raised in that court. *Bardes* v. *Zoning Board,* 141 Conn. 317, 318, 106 A.2d 160.

## II

Having decided that the Sheridan and Sylvia Dowling appeals must be dismissed for lack of jurisdiction, we next consider the Creedon appeal. The Creedon appeal involves the approval by the board of representatives of the action of the zoning board in granting Donahue's request to amend the zoning regulations. The amendment in question created

a new district called the "IP–D Designed Industrial Park District" but did not apply the new district to any particular piece of property within the city.

By way of a cross appeal, the defendants claim that the plaintiffs lack standing in the Creedon case because they were not aggrieved. Although both the plaintiffs and the defendants treat the Creedon appeal as arising under the pertinent sections of the Stamford charter, General Statutes § 8-10 provides that General Statutes §§ 8-8 and 8-9 shall govern appeals from a final zoning authority of any municipality whether or not such municipality has adopted the provisions of chapter 124 of the General Statutes, "and any provision of any special act, inconsistent with the provisions of said sections, is repealed." There can be no question that the board of representatives was acting as a final zoning authority in the Creedon case and that therefore appeals from it are governed by General Statutes §§ 8-8 and 8-9 rather than by any provisions found in the Stamford charter. See *Sullivan* v. *Town Council*, 143 Conn. 280, 286, 121 A.2d 630, where we held that the purpose of § 8-10 was to provide a uniform method of appeal from all zoning authorities, whether or not governed by special acts, "because of the confusion which had ensued from the pattern of general and special legislation relating to zoning which had developed in the state."

Under General Statutes § 8-8, as under § 556 of the Stamford charter (26 Spec. Laws 1238, No. 619 § 556), aggrievement is a prerequisite to a right of appeal. The Court of Common Pleas reached a conclusion that the plaintiffs in the Creedon appeal were aggrieved and that the basis for their aggrievement was the cumulative effect of the amendment to the zoning regulations, the prior approval of the

amendments to the master plan, and the subsequent rezoning of the Feldmann property by the zoning board. It is clear from its conclusions that the court took the entire transaction involved in all four appeals into consideration in finding aggrievement. We do not think that it was proper to do so. The plaintiffs chose to bring four separate appeals at different times, and each appeal concerns a separate action taken by one of three separate bodies charged with administering planning and zoning in Stamford. Because they chose such a course of action, the plaintiffs had to meet their burden of showing aggrievement in each separate appeal. Each case must stand or fall on its merits, and whether or not the plaintiffs were aggrieved in the Creedon case will depend solely on whether or not they were specially injured by the action appealed from in the Creedon case.

The trial court found that the creation of the new district which was the subject of the Creedon appeal could not affect any specific property in the city until such time as a specific area was designated for the new district through an amendment to the zoning map, which had not yet taken place as of the date of the approval of the application in the Creedon case. The court then proceeded to find that the plaintiffs' property values would be adversely affected in the event that the new zonal classification was applied to the Feldmann tract and used these prospective findings as a basis for finding that the plaintiffs were aggrieved. We think it was error to do so and hold that, as a matter of law, there can be no aggrievement when the zoning regulations of a municipality are amended in such a way that no particular area or property is affected. See *Mott's Realty Corporation* v. *Town Plan &*

*Zoning Commission,* 152 Conn. 535, 539, 540, 209 A.2d 179, which expressly overruled the contrary holding in *Mills* v. *Town Plan & Zoning Commission,* 145 Conn. 237, 241, 140 A.2d 871, and necessarily extinguished the authority of *Summ* v. *Zoning Commission,* 150 Conn. 79, 186 A.2d 160, so far as it relied on the holding in the *Mills* case. Except in cases involving the sale of alcoholic beverages, aggrievement requires a showing that the plaintiffs have a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as is the concern of the community as a whole, and that the plaintiffs were specially and injuriously affected in their property or other legal rights. *Hughes* v. *Town Planning & Zoning Commission,* 156 Conn. 505, 507, 242 A.2d 705; *I. R. Stich Associates, Inc.* v. *Town Council,* 155 Conn. 1, 3, 229 A.2d 545; *Hickey* v. *New London,* 153 Conn. 35, 37, 213 A.2d 308; *Tyler* v. *Board of Zoning Appeals,* 145 Conn. 655, 662, 145 A.2d 832; see "The Connecticut Law of Zoning (Part B)," 41 Conn. B.J. 453, 485–88.

We recognize that ordinarily the question of aggrievement is one of fact to be determined by the trial court on appeal. *Hughes* v. *Town Planning & Zoning Commission,* supra, 508. But such a finding may be set aside if it is legally or logically inconsistent with the facts or if some material error is made as to the law which applies so that the court's conclusion is unsound or violative of the plain rules of reason so as to be unwarranted in law. *Johnson* v. *Zoning Board of Appeals,* 156 Conn. 622, 624, 238 A.2d 413. In the Creedon appeal the plaintiffs were not specially and legally injured by the amendment in question since it did not affect them in their property or other legal rights. The trial court's

conclusion that they would be injured if the amendment was later applied to the Feldmann tract was prospective and speculative under the facts relevant to the Creedon case. "Allegations and proof of mere generalizations and fears are not enough to establish aggrievement." *Hughes* v. *Town Planning & Zoning Commission,* supra.

Because we find error in the trial court's conclusions and hold that the plaintiffs in the Creedon case were not aggrieved as a matter of law, the judgment file should be corrected to reflect want of aggrievement. There is no need to discuss either the other assignment of error pursued in the defendants' brief on their appeal or the claims of the plaintiffs in their appeal.

### III

We now come to the John Dowling appeal, which concerns the action of the zoning board in applying the new classification which was the subject of the Creedon appeal to the Feldmann tract. No issue of aggrievement is raised in the John Dowling case, and our examination of the record indicates that this is the only stage in the entire transaction which could reasonably be said to involve an aggrieved plaintiff.

On October 19, 1966, the zoning board unanimously approved a change in zone for approximately sixty-five acres of the Feldmann property from "R—7½ One Family Residence District" to "IP–D Designed Industrial Park District." This change permits a part of Feldmann's property to be used for experimental electronic laboratories; professional, administrative, scientific, educational, statistical, executive, engineering, sales and drafting-room offices; experimental, research and develop-

ment laboratories, including engineering research laboratories; any use conducted entirely within a building consisting of the nonretail sale of goods; the providing of professional, personal or commercial services; or the fabrication or handling of cosmetics, pharmaceuticals, electronic and scientific instruments, models, optical instruments and light synthetic and plastic products. Safeguards are established to prevent any use which would cause noise, smoke, vibration, fire or explosive hazards, as well as certain other specified conditions which are generally considered objectionable in a modern residential neighborhood.

There are exacting requirements regarding signs, parking space, building coverage, landscaping, driveways, sidewalks and access to public highways. The design of the buildings themselves and their construction are carefully regulated. Extensive plans are required to be submitted for approval by the zoning board, and applications for certain improvements and alterations would require public hearings if the board decides that the applications contain elements of such a new or different nature as to justify hearings thereon.

The plaintiffs' first claim in the John Dowling appeal is that the IP–D district is a "floating zone" and, as such, is illegal for a variety of reasons. When the IP–D district was adopted, and before it had been applied to the Feldmann property or any other area in the city, the boundaries of the new district were not delineated in the regulations or on the map. Section 9 of the regulations was amended so as to provide for application of the new district to specific properties by effecting a change in zone. Proposals for a change of zone to the new district were to be submitted to the zoning board after a

change had been made in the master plan by the planning board. The zoning board would consider all the factors which usually were considered when making a change in zone, together with additional criteria, such as the use and architectural design of the proposed buildings, the site plan, and screening from adjacent residential areas.

The plaintiffs were correct in characterizing the IP–D district as a floating zone. A floating zone is a special detailed use district of undetermined location in which the proposed kind, size and form of structures must be preapproved. It is legislatively predeemed compatible with the area in which it eventually locates if specified standards are met and the particular application is not unreasonable. *Chatham Corporation* v. *Beltram,* 243 Md. 138, 149, 220 A.2d 589; 2 Anderson, American Law of Zoning § 12.11. It differs from the traditional "Euclidean" zone in that it has no defined boundaries and is said to "float" over the entire area where it may eventually be established. *Bigenho* v. *County Council,* 248 Md. 386, 391, 237 A.2d 53.

While the concept of a floating zone is similar to the established power of a zoning board to grant special exceptions, the two types of regulation may be distinguished. The special exception is the product of administrative action, while the floating zone is the product of legislative action. 1 Anderson, American Law of Zoning § 5.16. Further, if a landowner meets the conditions set forth for a special exception, the board is bound to grant one, but in the case of a floating zone discretion is maintained and additional limitations may be imposed—more control is retained by the zoning board because it is acting legislatively. "The Connecticut Law of Zoning (Part A)," 41 Conn. B.J. 262, 293.

Unlike the special exception, when a zoning board grants an application requesting it to apply a floating zone to a particular property, it alters the zone boundaries of the area by carving a new zone out of an existing one. *Hawkes* v. *Town Plan & Zoning Commission,* 156 Conn. 207, 209, 240 A.2d 914; *DeMeo* v. *Zoning Commission,* 148 Conn. 68, 73, 167 A.2d 454. This legislative function meets the need for flexibility in modern zoning ordinances since the exact location of the new zone is left for future determination, as the demand develops, and applications are granted which meet all conditions specified by the board. See "The Connecticut Law of Zoning (Part A)," 41 Conn. B.J. 262, 290–93. Thus, a floating zone provides more control over changes than does the granting of special exceptions, as noted above, with no greater likelihood of creating incompatible uses, and with no less forewarning than precedes the granting of a special exception. 1 Anderson, loc. cit.

This court has recognized the legality of floating zones, when properly applied, in a number of decisions. *Hawkes* v. *Town Plan & Zoning Commission,* supra; *Dooley* v. *Town Plan & Zoning Commission,* 154 Conn. 470, 226 A.2d 509; *Luery* v. *Zoning Board,* 150 Conn. 136, 187 A.2d 247; see also *Summ* v. *Zoning Commission,* 150 Conn. 79, 186 A.2d 160. Nevertheless, the plaintiffs make the claim that the creation of the IP–D district is in violation of the Stamford enabling act. We do not agree. Section 550 of the Stamford charter (26 Spec. Laws 1234, No. 619 § 550) provides, in part, that "[t]he zoning board is authorized to regulate the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open

spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes; and the height, size, location and character of advertising signs and billboards." We feel that this language, just as that in General Statutes § 8-2, is sufficiently broad to permit the creation of floating zones. In creating a floating zone, and in applying it to a particular area, the Stamford zoning board is regulating the location and use of buildings and land in a manner which clearly is permitted under the enabling act in question.

A subordinate claim of invalidity is that the enabling act requires zoning by districts and that the adoption of a floating zone leaves the determination of districts to future legislation. The Stamford zoning board is not required to divide the town into districts of defined area and boundaries, however; the language of the charter is permissive rather than mandatory. See *Lebanon* v. *Woods,* 153 Conn. 182, 191, 215 A.2d 112. Furthermore, the zoning board did apply the floating zone to a specific district by carving out a new zone in the action which is the subject of the John Dowling appeal.

The plaintiffs also claim that the action of the zoning board was not in accordance with Stamford's comprehensive plan of zoning. "In Stamford, the comprehensive plan is to be found in the master plan and the zoning regulations." *Luery* v. *Zoning Board,* 150 Conn. 136, 143, 187 A.2d 247. After the regulation creating the IP–D district was passed by the zoning board, it was only necessary for the zoning board to act on the application for the change in zone in question to have it fit into the comprehensive plan. Ibid. And since the change of zone is in accordance with the comprehensive plan, the claim

that the change constitutes spot zoning also vanishes. *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission,* 152 Conn. 7, 12, 13, 202 A.2d 241.

In arguing that floating zones are not permitted under Stamford's enabling act, the plaintiffs rely heavily on the case of *Eves* v. *Zoning Board of Adjustment,* 401 Pa. 211, 164 A.2d 7. The *Eves* case may be distinguished because it utilizes a different meaning of "comprehensive plan" from that which has evolved in this state; in Connecticut the comprehensive plan is embodied in the map and regulations, whereas in Pennsylvania it is treated as separate and distinct from them. *Donahue* v. *Zoning Board of Adjustment,* 412 Pa. 332, 194 A.2d 610, decided by the Pennsylvania Supreme Court three years later than the *Eves* case, is much closer to the John Dowling case on its facts, since the new classification was established and the zoning map amended within a very short period of time. The *Donahue* case distinguished the *Eves* case and held that the change in zone, coming so soon after the creation of the new district, was in accordance with the comprehensive plan.

The plaintiffs' next claim is that no new conditions have arisen since adoption of the zoning map and that changes in zone should not be made unless new conditions have arisen which substantially alter the character of the area involved. Since the Stamford zoning board acted legislatively in making the change in question, however, it is not necessarily bound by the rule which would prohibit it from reversing an earlier decision when it is acting administratively. *Malafronte* v. *Planning & Zoning Board,* 155 Conn. 205, 209, 230 A.2d 606. The rule which the plaintiffs advance will only be applied "in those rare instances where the zoning amendment is pat-

ently arbitrary." Ibid. Unless the amendment is arbitrary, when floating zones are applied a showing of changed conditions or improper classification is not required. "The Connecticut Law of Zoning (Part A)," 41 Conn. B.J. 262, 292.

There is no merit to the subordinate claim that the change in zone under consideration was arbitrary or unreasonable. The challenged plan imposed far more stringent requirements than those for residential districts in general and was aimed toward effecting a balance between the pressures of population growth and business expansion and the preservation of property rights in the area. In rezoning the Feldmann tract, the zoning board had before it evidence that Stamford had only one square mile of industrial land out of its forty square miles of territory; that the property in question was suitable for industrial development; that industrial areas were located nearby; that no traffic congestion would result; and that efficient planning and zoning required additional industrial property in the area. The plaintiffs raise the spectre of dark, narrow streets with nineteenth-century factories packed closely together, spewing smoke into the sky and filling the air with unbearable din. Nothing could be further from the instant case. The regulations provide for offices, laboratories, and light industry. The projected buildings may not exceed two stories and must be designed so as to blend in with the character of the surrounding area. Ample buffers are provided and landscaping is required. When it is based on community need such as that demonstrated in the instant situation, allowing light industry adjacent to residential areas is the present trend in zoning and is not arbitrary or unreasonable. See *Jablon* v. *Town Planning & Zoning Commission,* 157

Conn. 434, 254 A.2d 914; *Levinsky* v. *Zoning Commission,* 144 Conn. 117, 124, 125, 127 A.2d 822; *Bartram* v. *Zoning Commission,* 136 Conn. 89, 94, 68 A.2d 308. There was ample evidence from which the zoning board could reasonably find that no traffic congestion would result from the proposed change. Furthermore, both parking and access to public highways on the proposed site are to be carefully supervised by the board and are subject to its final approval. In light of the above factors, it appears from the record before us that the judgment of the zoning board to proceed and act on the present application has been reasonably and fairly exercised and honestly arrived at after giving proper consideration to the public welfare in evaluating the needs of the city in relation to the appropriate use of land contained therein. *Jablon* v. *Town Planning & Zoning Commission,* supra, 437, 438; *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission,* 152 Conn. 7, 11, 202 A.2d 241.

The plaintiffs' next claim is that the ordinance is unconstitutional in that it violates the express provisions of the enabling act and fails to provide for sufficient public hearings. We have already disposed of the first of these two arguments when we found that zoning by district is not required in Stamford and that the board is not limited to the traditional "Euclidean" type of zoning.

Turning to the claim that the amendment in question is unconstitutional so far as it dispensed with the necessity of public hearings at certain stages, we must examine the provisions of the ordinance. Any application for a change in zone to the IP-D district requires a public hearing, just as any change in the zoning map, under §§ 9 and 20 of the Stamford zoning regulations (1951, as amended) and § 552 of

the Stamford charter. 26 Spec. Laws 1234, No. 619 § 552. Before a building permit may issue, § 9 of the regulations further requires a public hearing on the exterior architectural design, the proposed use or uses of the initial building, the layout of roads, and the site plan, including screening from adjacent residential areas. In addition, § 9 (C) (9) (m) of the regulations requires public notice of modifications of the site plan and subsequent applications for the design and use of additional buildings. After the public notice, the zoning board is empowered, under § 9 (C) (9) (m) of the ordinance and under § 554.1 of the charter (26 Spec. Laws 1237, No. 619 § 554.1), to hold additional public hearings if the subsequent applications or changes contain "elements of such a new or different nature as to justify the setting of a public hearing thereon." We agree with the trial court that the public hearings provided for are ample and adequately protect the interests of all persons affected. The claim of the plaintiffs that a "factory" might suddenly be located nearby one's dwelling without notice, through some clandestine process, is clearly without merit, and they have failed to meet their burden of showing that the ordinance is unconstitutional. See *Gionfriddo* v. *Windsor,* 137 Conn. 701, 706, 81 A.2d 266. The instant situation is clearly not one in which the provisions are arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. See *St. John's Roman Catholic Church Corporation* v. *Darien,* 149 Conn. 712, 722, 184 A.2d 42.

The plaintiffs' final claim is that the procedure of holding only one public hearing before the zoning board on both the application for creation of the IP-D district and the application seeking to apply

the new district to the Feldmann tract was improper under the Stamford charter. There is no merit, however, in the plaintiffs' attempts to distinguish the case of *Norris* v. *Planning & Zoning Commission,* 156 Conn. 592, 244 A.2d 378. In the *Norris* case, this court held that it was proper for the Westport commission to consider three separate but interdependent applications in a single public hearing. "The proposals were clearly interdependent, and to require completely separate hearings, testimony, exhibits and arguments on each proposal would not only be unduly burdensome but serve no useful purpose. . . . The important fact is that, although the commission heard all the evidence on the three proposals at a single hearing, when it came to act upon them, it clearly acted separately and distinctly and for specific and relevant reasons on each of the proposals." Id., 596, 597. We can find no language in the Stamford charter which would indicate that a different rule applies to the instant case. Although one public hearing was held, the Stamford zoning board separately and distinctly acted on each application, and the plaintiffs have failed to show how their own somewhat cumbersome procedure of taking separate appeals from the individual actions of the zoning board in the Creedon and John Dowling cases has been adversely affected.

## IV

There is no error in the case of *John B. Dowling* v. *Zoning Board of the City of Stamford;* there is error in the form of the judgment in the cases of *John M. Sheridan* v. *Planning Board of the City of Stamford* and *Sylvia Dowling* v. *Planning Board of the City of Stamford,* each judgment is set aside and the court is directed to render judgment dismissing

the appeal in each case for lack of jurisdiction; in the case of *Richard S. Creedon* v. *Board of Representatives of the City of Stamford,* there is error in the form of the judgment, it is set aside and the court is directed to render judgment as on file except as corrected to accord with this opinion.

In this opinion the other judges concurred.