[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from the action of the defendant Planning and Zoning Commission of the Town of Stonington (hereinafter the Commission) denying an application to amend a special use permit previously issued to the plaintiff Dodson Boatyard, LLC. For reasons hereinafter stated, the decision of the Commission is reversed. CT Page 1307
Plaintiff, claiming to be aggrieved by the decision appealed from, has instituted this appeal under the provisions of Connecticut General Statutes §§ 8-9 and 8-8. Section 8-8 (b) limits such appeals to persons aggrieved by the decision appealed from. Pleadings and proof of aggrievement are essential to establish subject matter jurisdiction over the appeal under the provisions of § 8-8 (b). Hughes v. Town Planningand Zoning Commission, 156 Conn. 505, 507 (1968).
The evidence indicates that the plaintiff acquired title to the property in question by trustee's deed executed on September 14, 1999 and recorded in the Stonington Land Records on September 20, 1999. The evidence further indicates that on or about March 21, 2000, plaintiff applied to the Commission for modification of an existing special use permit, which application was denied by the Commission on or about October 7, 2000. It is therefore found that the plaintiff corporation is statutorily aggrieved and has standing to prosecute this appeal.Primerica v. Planning and Zoning Commission, 211 Conn. 85, 94 (1989).
The basic factual situation underlying this appeal does not appear to be greatly in dispute and may be summarized as follows. Plaintiff's property is located on Water Street in the Town and Borough of Stonington and lies on the easterly side of the waters of Stonington Harbor. The plaintiff, and its predecessors in title, have operated a full service marina[1] on the land since at least the 1920s. The marina property consists of five tracts of land which are separated from each other by streets and an intervening property owner. The five tracts have been identified on the maps of the town tax assessor as Lots 2, 3, 4, 7 and 9. This appeal involves Lot 9.
The Town of Stonington and the Borough of Stonington both regulate land use within their respective jurisdictions by zoning regulations. The marina lies within both jurisdictions. The jurisdictional line does not follow the lines of the tract. or parcels of land but cuts across certain parcels including Lot 9.
That portion of the marina lying within the Borough has been designated Planned Waterfront District (PW) and that portion which lies within the jurisdiction of the Town is zoned marine commercial (MC-80).
Although the parcels are separate, petitioner and its predecessors in title have utilized the entire property as one unified entity for its marina operation. Since the marina existed well before any zoning regulations were enacted, nonconformities may be found on the property. The fact that some of the lots which make up the marina are divided jurisdictionally also raises special problems. CT Page 1308
Marinas are allowed under the Commission's regulations in the MC-80 district by special permit. See regulations §§ 4.6.3.3 and 6.1. On April 15, 1997, the Commission approved a site plan and issued a special use permit to plaintiff's predecessor in title Dodson's Boatyard, Inc. for the marina operation which had been in existence for many years prior to such approval presumably without formal approval. Just prior to January 14, 2000, the town zoning enforcement officer conducted a routine inspection of the marina and for the first time noted what he described as several storage sheds erected without a permit and in violation of the setback line of the town zoning regulations. These sheds, as he described them, were located on assessor's Lot 9. The ZEO's observation was followed up by a notice to the plaintiff and then a cease and desist order.
In response to the cease and desist order, plaintiff applied to the Zoning Board of Appeals for a variance to resolve the setback problem. Plaintiffs also applied to the Commission to amend the special use permit issued in 1997 to allow "temporary (movable) steel storage containers as shown on the site plan and consisting of three 40' x 8' ocean freight containers and four 20' x 8' ocean freight containers."
The Commission held public hearings on plaintiff's application on August 15, 2000 and on September 19, 2000. At its meeting held October 17, 2000, the Commission voted to deny plaintiff's application to modify the special use permit. The reasons stated by the Commission's decision were:
(1) The application exceeds the allowable Floor Area Ratio.
(2) The structure would be within the required rear yard setback.
Within the time allowed by law, plaintiff appealed this decision. All legal notices appear to have been properly published and no jurisdictional defects have been noted.
When acting on a special permit application, the Commission was acting in its administrative capacity. Sheridan v. The Planning and Zoning Boardof the City of Stamford, 159 Conn. 1 (1969). "A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the `conditions necessary to protect the public health, safety, convenience and property values.' General Statutes § 8-2. . . . Acting in this administrative capacity, the board's function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and CT Page 1309 whether the standards set forth in the regulations and the statute are satisfied." (Citations omitted.) A.P. W Holding Corporation v. Planning Zoning Board, supra, 185. Housatonic Terminal Corporation v. Planning Zoning Board, 168 Conn. 304, 307 (1975).
In deciding the issues presented by this appeal, the Court is limited in its scope of review by statute and applicable case law. Review of the decisions of local zoning authorities is limited to a determination, principally on the record before the Commission, whether the Commission abused the discretion vested in it. Tazza v. Planning ZoningCommission, 164 Conn. 187, 191 (1972). Conclusions reached by the commission must be upheld by the court if they are reasonably supported by the record. Primerica v. Planning Zoning Commission, supra,211 Conn. 96. The question on review of the commission's action is not whether the court would have reached the same conclusion, but whether the record before the commission supports the decision reached. Id. Although the factual and discretionary determinations of the commission must be given considerable weight, it is for the court to expound and apply governing principles of law. Domestic Violence Services of Greater NewHaven, Inc. v. FOIC, 47 Conn. App. 466, 470 (1998). In reviewing the denial of a special permit, it is sufficient if any one of the commission's given reasons supports the decision. Friedman v. Planning Zoning Commission, 222 Conn. 262, 268 (1992).
Plaintiff has raised three issues which must be considered by the Court:
 (A) Whether the plaintiff met the requirements of § 6.4 of the Town of Stonington zoning regulations for the granting of a special permit?
 (B) Whether the defendant Commission's reasons for denial were contrary to the facts presented and the established law of the State of Connecticut?
 (C) Whether the containers comply with the F.A.R. and rear yard setback requirements on the basis of a variance issued August 9, 1993?
All of these issues raised by the plaintiff will be considered, although not in the order presented.
 I.
Special permits are governed by Article VI of the Town zoning regulations. Section 6.4 contains standards for the granting of special permits. Plaintiff claims that it has met all of the requirements of this CT Page 1310 section and therefore the application should have been granted. Since a special permit had already been issued for the marina use, it must be concluded that, except for the problems noted by the zoning enforcement officer on Lot 9, there is general compliance with § 6.4. Section 6.47 requires that an application comply with:
 6.4.7 All applicable regulations (State, Federal and local) have been complied with satisfying all design, procedural and review requirements.
Presumably, the Commission has found noncompliance with this section in its conclusion that plaintiff has failed to satisfy the applicable zoning regulations with respect to Floor Area Ratio (F.A.R.) and the rear yard setback.
The F.A.R. in the MC-80 zone as set forth in Table 5.2.1 of the regulations is .25. At the public hearing held August 15, 2000, plaintiff, by its attorney, submitted a calculation of the F.A.R. presented by the containers at .248, which would be within the minimum requirement. The record is devoid of any other calculation by anyone.
At the conclusion of the public hearing, the Commission elected to refer the F.A.R. rear yard setback line issues to its attorney for a legal opinion. The attorney complied and a report, which included the attorney's written opinion, was presented by the planning director at the Commission's meeting held September 19, 2000. This report, consistent with the attorney's letter, recommended denial of plaintiff's application as it would exceed the allowable F.A.R. and would place a structure within the required rear yard setback line.
No calculation of the F.A.R. was included in this report. The reasons for this is that the approach taken with respect to the lot made it obvious that compliance with the F.A.R. would be impossible. In considering the F.A.R. of the lot only "that portion within the town and excluding the borough" was considered.
This approach was totally inconsistent with prior actions of the Commission. When the original special use permit was issued in 1997, it was a cooperative effort with the Commission and Borough zoning authority together considering the marina as one consolidated property so that permits could be issued. For example, a storage building which received a borough zoning permit was supported by the necessary parking spaces located on land within the Town's jurisdiction. Also, when the Commission approved Dodson Boatyard, LLC's application for a temporary storage shed on Lot 9, the F.A.R. was calculated on the square footage of the entire parcel, not just that within the Town's jurisdiction. This practical CT Page 1311 approach to the divided jurisdictional situation is appropriate and not inconsistent with the definitions of lot and lot area as found in § 1.2 of the town zoning regulations. If a board's time-tested interpretation of a regulation is reasonable, that interpretation, should be accorded great weight by the courts. Doven v. Zoning Board ofAppeals, 67 Conn. App. 597, 611 (2002).
The Commission's use of the entire tract in considering the F.A.R. problem within the marina and particularly Lot 9 was pointed out to the Commission's attorney. The attorney then wrote to the planning director confirming his prior opinion that the zoning law of each municipality applied only within the land of that municipality. The attorney then went on to state that where the decision had already been made on prior occasions that the F.A.R. calculations should be based on the whole lot, the Commission should be consistent and follow this procedure. It is noted that this memorandum to the planning director was dated October 30, 2000, well after the Commission's decision to deny the application.[2]
It must be concluded then that in calculating the F.A.R. in connection with petitioner's application to amend the special permit the total area of the lot should have been utilized. Since the only calculation of the F.A.R. utilizing the whole lot was that submitted by petitioner showing compliance with the requirements of Table 5.2.1, the conclusion by the Commission that the application exceeded the allowable F.A.R. was not in accordance with the evidence before the Board or the applicable law.
 II.
The third issue advanced by the petitioner is "whether the containers comply with the F.A.R. and the rear yard setback requirement on the basis of the variance issued August 9, 1993."
As previously noted, upon receipt of the cease and desist order with respect to the containers, petitioner instituted the present application to amend the special permit and at the same time petitioned the Town's Zoning Board of Appeals for a variance of the 50 foot rear yard setback requirement. The containers were so situated that only eight foot compliance could be had.
During the proceedings before the Zoning Board of Appeals, it was discovered that in August, 1983, a variance had been obtained for Lot 9. The certificate of variance indicated that the variance was "to permit a reduction in rear area setback to six feet and increase the floor area ratio to 0.41." It would appear that this variance reduced the rear area setback to six feet and increased the F.A.R. If the rear yard setback CT Page 1312 was, in fact, reduced to six feet, the application would be in compliance with the rear yard established by the variance.
The Commission, in concluding that the "structure would be within the rear yard setback," was proceeding on the premise that the variance did not reduce the 50 foot requirement for the lot. The argument that the variance did not reduce the 50 foot setback requirement was that the variance was granted only for the purpose of allowing the construction of a particular building on the lot and since the power to grant a variance should be sparingly exercised, it should not be expanded beyond the original intention.
While it is true that variances should be sparingly granted and variances are the antithesis of zoning and disrupt the uniformity of the regulations, a variance was, in fact, granted with respect to Lot 9. A variance constitutes permission for a party to use their property in a manner otherwise prohibited by the zoning regulations. Bloom v. ZoningBoard of Appeals, 233 Conn. 198, 206 (1995).
Although the variance application may have been made to allow a separate building, there is nothing in the wording of the certificate of variance which limits its application to this building. Connecticut General Statutes § 8-6 (b) provides that variances are to run with the land and not to be personal in nature. Variances are not extinguished by the transfer of title to property. Section 8-7 (2) requires that a copy of the variance be recorded in the town land records. There is nothing to indicate that the statute was not followed here and it must be presumed that the certificate of variance was recorded in the land records in accordance with the statutory requirement. Under these circumstances, a prospective purchaser of the property, upon reviewing the recorded certificate of variance, would be justified in believing that the setback line was reduced to six feet.
It has also been argued that the variance could not affect the containers since these items were not on the property at the time the variance was issued. Aside from the question as to when the containers were first located on the property, there is no requirement that structures or uses authorized by a variance be in existence at the time the variance is issued. Experience is all to the contrary. The usual and prudent procedure is for the variance to be requested for a potential project and then only after it has been approved would construction start.
It must then be concluded that the variance issued in 1993 did in effect reduce the rear yard setback line for Lot 9 to six feet and that plaintiff's application is in compliance with this requirement. The CT Page 1313 variance also expanded the F.A.R. requirement.
 III.
In its brief, plaintiff argues that the reasons cited by the Commission for its denial of the application to amend the special permit were contrary to the facts and the established law of the State of Connecticut. At issue here is whether or not the provisions of Connecticut General Statutes § 13a(a) concerning nonconforming buildings and land uses apply to the containers on Lot 9. This statute provides as follows:
 Sec. 8-13a. Nonconforming buildings and land uses. (a) When a building is so situated on a lot that it violates a zoning regulation of a municipality which prescribes the location of such a building in relation to the boundaries of the lot or when a building is situated on a lot violates a zoning regulation of a municipality which prescribes the minimum area of the lot, and when such building has been so situated for three years without the institution of an action to enforce such regulation, such building shall be deemed a nonconforming building in relation to such boundaries or to the area of such lot, as the case may be.
This statute has been strictly construed by the courts to disallow protection for structures which cannot reasonably be considered buildings. The statute does not contain a definition of "building." The town zoning regulations, § 1.2.2.16, does however define a building as: .
16 Building — A structure having a roof, which forms an enclosure for the shelter of persons, animals or property. For the purpose of this definition, "roof" shall include an awning or any similar covering, whether or not permanent in nature.
It appears that the definition of "building" has been broadly drawn so that a wide variety of structures may be regulated. This is not unusual. The Connecticut General Statutes § 53a-100 also defines "building" broadly so as to bring a number of items within its ambit.
The evidence before the Commission indicates that the containers are self contained with a roof which, together with the walls, forms an enclosure. The evidence also indicates that the containers are used to CT Page 1314 store boatyard equipment and supplies and that at least one of them is used as a workshop where persons varnish boat parts. It therefore appears that the containers would have to be considered buildings under the regulations if they are structures. Structures are defined by § 1.2.2.116 in pertinent part as follows:
 .116 Structure — Anything constructed or erected, including a building which has a permanent location on the ground or anything attached to something having a permanent location on the ground. . . .
The question then is whether or not the containers can be considered buildings which have "a permanent location on the ground or anything attached to something having a permanent location on the ground." It is noted that the definition of structure does not require a cement or other foundation. Permanent location on the ground appears to be sufficient under the regulation. In its brief, plaintiff claims that the containers fit the description of a building found in the zoning regulations and, therefore, are entitled to the protection of the statute. This has not always been the case however. The containers were not shown on the application for a building on lot 9 filed in 1997. Because plaintiff considered that they were moveable, the containers were put into the same category as refuse containers and dumpsters. In its application to amend the special permit filed in this case, the containers were described as "temporary (moveable) steel containers."
Plaintiff's prior description, however, is not conclusive.
From the photographs in evidence, the containers appear to have been in their present location for some time. They have been placed one on top of the other so as to create two stories. A wooden stairway and landing have been erected to facilitate access to the second floor containers. They have been equipped with power, light and heat. At least one of the containers has regular windows. Under the broad definition found in the regulation, the containers could be found to be structures and therefore buildings. The description of the containers by the zoning enforcement officer at the hearing held on August 15, 2000 is illuminating. The officer testified that "when he inspected the rear area of lot 9 he found several storage sheds had been erected on the site." He then went on to say, "these things are structures, they need permits."
Although there was no evidence of a cement foundation, the zoning enforcement officer testified that the containers had been in position for some time. The existence of the stairway and landing together with the windows also enhanced the appearance of permanency. The fact that the CT Page 1315 containers were configured into two floors added to the perception of permanency.
The Commission must have agreed with the zoning enforcement officer's determination because in its decision to deny petitioner's applications, the containers were described as a "structure." This conclusion that the containers were a structure as defined by the regulations is not unreasonable and is supported by substantial evidence in the record. Since the containers have been found to be structures, they fall within the broad description of a building provided under the zoning regulations.
The Commission contends that even if the containers are considered a building they still are not entitled to the protection of Connecticut General Statutes § 8-13a (a) because they were not situated on the lot for three years. All of the evidence in the record is to the effect that the containers were in place well over three years before being discovered by the zoning enforcement officer. The Commission's position, however, is that although the containers may have been on lot 9 for over three years they could not have been considered buildings, or structures for those years because plaintiff considered them to be moveable. This, however, begs the question. The zoning enforcement officer and the Commission both found the containers to be structures, or a structure. It must therefore be concluded that the containers are buildings and that § 8-13a (a) applies to them.
Before the provisions of § 8-13a (a) become applicable, it is not necessary for the property owner to have applied for a building permit for the offending buildings. Section 8-13a amounts to a statute of limitations for non-conforming buildings. It provides that where a building is located on a lot in violation of the setback requirements for a period of three years without the institution of an action to enforce the regulations, the building is considered a nonconforming building in relation to the boundary of the lot. Fuller, 9 A Connecticut Practice Series: Land Use Law and procedure, Section 4.35, p. 110 (1999).
 III
Based upon the above analysis of the substantial evidence in the record and the applicable law, it is found that plaintiff has met its burden of proof in establishing it has satisfied the requirements of § 6.4 of the Zoning Regulations and is entitled to the special permit applied for. The reasons stated by the Commission with the denial of the special permit are not supported by substantial evidence in the record. It must also be found that the containers, as they exist, are non-conforming buildings under the provisions of Connecticut General Statutes § CT Page 13168-13a (a). It must further be found that in denying plaintiff's application, the Commission abused the discretion vested in it. The term "abuse of discretion" does not imply a bad motive or wrong purpose but simply means that the decision of the Commission was made on untenable legal grounds. State v. Angelo, 25 Conn. App. 235, 241 (1991).
Accordingly, the decision appealed from is reversed.
Joseph J. Purtill, Judge Trial Referee