SUSAN C. CAMPION ET AL. *v.* BOARD OF ALDERMEN
OF THE CITY OF NEW HAVEN ET AL.
(SC 17347)
(SC 17348)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued January 4—officially released June 6, 2006

*Barbara M. Schellenberg,* with whom was *Austin K. Wolf,* for the appellants in Docket No. SC 17347 (defendant Anthony DelMonaco Family Limited Partnership et al.).

*Linda L. Morkan,* with whom were *Peter S. Olson, Philip W. Pastore III* and, on the brief, *Thomas W. Ude, Jr.,* and *Thomas P. Cody,* for the appellants in Docket No. SC 17438 (named defendant et al.).

*John M. Gesmonde,* for the appellees (plaintiffs).

*Joel Cogen* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*Christopher J. Smith, Matthew Ranelli* and *Erik J. Ness* filed a brief for the Connecticut Chapter of the American Planning Association as amicus curiae.

*Opinion*

BORDEN, J. The sole issue in this certified appeal is whether any enabling authority exists for § 65 of the New Haven zoning ordinance, which provides for the creation of planned development districts. Certain of the defendants, namely, the board of aldermen of the city of New Haven (board of aldermen), the Anthony DelMonaco Family Limited Partnership (DelMonaco partnership), and Antonio DelMonaco and Anna DelMonaco (DelMonacos), appeal,[1] following our grant of certification, from the judgment of the Appellate Court reversing the trial court's judgment dismissing the plaintiffs'[2] zoning appeal. The defendants claim that the Appellate Court improperly concluded that the provisions regarding the creation of a planned development district set forth in § 65[3] of the New Haven zoning ordi-

---

[1] This case involves two separate appeals. The first appeal was brought by the named defendant, the board of aldermen. The other defendants are New Haven mayor John DeStefano, Jr., the DelMonaco partnership, and the DelMonacos. The second appeal was brought by the DelMonaco partnership and the DelMonacos, as owners of the individual parcels of property that are the subject of this appeal. Specifically, the board of aldermen and the DelMonacos filed separate appeals to this court from the judgment of the Appellate Court. Subsequently, we consolidated the appeals pursuant to Practice Book § 61-7.

[2] The plaintiffs in this matter, Susan C. Campion, Daniel J. Maffeo, Jr., Robert Tigelaar, Mary T. Tigelaar, Adrea M. Nardini, Cynthia Smith, Sandra Wilson, Marcella A. Mascola and David E. Kronberg, are individuals who own property located close to the defendants' parcels in the Morris Cove section of New Haven. See *Campion* v. *Board of Aldermen*, 85 Conn. App. 820, 821, 859 A.2d 586 (2004).

[3] Section 65 of the New Haven zoning ordinance provides in relevant part: "65.A. Objectives. The provisions of this section are to be applied in instances where tracts of land of considerable size are developed, redeveloped or renewed as integrated and harmonious units, and where the overall design of such units is so outstanding as to warrant modification of the standards contained elsewhere in this ordinance. A planned development, to be eligible under this section, must be:

"1. in accordance with the comprehensive plans of the City, including all plans for redevelopment and renewal;

"2. composed of such uses, and in such proportions, as are most appropriate and necessary for the integrated functioning of the planned development and for the city;

"3. so designed in its space allocation, orientation, texture, materials, landscaping and other features as to produce an environment of stable and desirable character, complementing the design and values of the surrounding

nance were not authorized by the legislation that enables the city of New Haven (city) to exercise zoning

neighborhood, and showing such unusual merit as to reflect credit upon the developer and upon the city; and

"4. so arranged as to provide a minimum of 250 square feet of usable open space per dwelling unit on the tract, except 125 square feet in the case of elderly housing units, subject to the specific minimum standards enumerated in section 15.A.1.g of this ordinance.

"Section 65.B. Tract. The tract for which application is made must have the following minimum area:

"1. For a Planned Development Unit under paragraph D.1 below, one-half acre in the case of dwellings only, and one acre in all other cases.

"2. For a Planned Development District under paragraph D.2 below, one acre in the case of dwellings only, and two acres in all other cases.

"Section 65.C. Who may apply. An Application may be filed by (1) the owner or owners or lessee or lessees of all land and structures included within the tract, or (2) any governmental agency including the New Haven Redevelopment Agency. . . .

"Section 65.D. Application and General Plans. Each Application shall state the proposed modifications of existing zoning, and shall be accompanied by General Plans, including contoured site plans. The General Plans shall show the improvements to be erected upon the tract, the open spaces to be provided, the nature and location of the proposed use or uses, the relationship of the proposed development to surrounding properties, and other pertinent information.

"Traffic Impact Study. All applications filed pursuant to this section shall be referred to the Department of Traffic and Parking for an advisory report on the traffic impact. The traffic impact study shall show the amount and direction of traffic to be generated by the proposed development and shall estimate the effect of such traffic on the roadway capacity and safety.

"The Application and General Plans shall be sufficient in scope and character to determine that the Objectives stated in subsection A above will be met. Any proposed division of the tract into separately owned and operated units shall be indicated. The Application and General Plans shall be filed and acted upon in the following manner:

"1. Where the proposed modifications of existing zoning concern only the bulk and placement of structures and the size and shape of lots (regulation of lot area, average lot width, distance between buildings, size of courts, yards, gross floor area, building height, and/or building coverage), or involve a reduction of lot area per dwelling unit of no more than 33 percent, such Application and General Plans shall be filed with the Board of Zoning Appeals and acted upon as a special exception under subsection 63.D of this ordinance. . . .

"2. In any other case, the Application and General Plans shall be filed with the Board of Aldermen and acted upon as a proposed amendment to this ordinance. If such Application and General Plans are approved by the Board of Aldermen, following a favorable recommendation by the City Plan Commission and after an advisory report from the Department of Traffic and Parking regarding the traffic impact study, upon specific findings that each of the objectives stated in the subsection 65.A above will be met, such approval shall be construed to amend this ordinance insofar (and only

authority, and that the standards contained in § 65 were too vague for such a creation to be valid. We agree. Accordingly, we reverse the judgment of the Appellate Court.

On April 16, 2001, the DelMonaco partnership filed an application for a new planned development district related to property that it owned in the city in order to expand the operations of its catering business. Upon holding public hearings on the application, the New Haven plan commission (commission) approved the application, but recommended imposing certain conditions on the development. The commission forwarded its approval to the board of aldermen, which, after substantially modifying several details of the expansion, also approved the application.[4] The plaintiffs appealed from the board of aldermen's decision to the trial court, which concluded that the board of aldermen's decision was supported by substantial evidence and dismissed the plaintiffs' appeal. Subsequently, the plaintiffs petitioned the Appellate Court for certification to appeal from the decision of the trial court, pursuant to General Statutes § 8-9.[5] The Appellate Court granted the petition

insofar) as specific deletions, additions and changes are made which are related to the land and structures in the tract, and the tract shall be designated as a separate Planned Development District provided that the requirements of subsection 65.E below are met.

"3. All applications filed under this section may be referred by the Board of Zoning Appeals in the case of Planned Development Units, and by the Board of Aldermen in the case of Planned Development Districts, to any Neighborhood Planning Agency (NPA) of jurisdiction as defined in Section 1 of this Ordinance, which may issue an advisory report on the proposed zoning designation to the Board of Zoning Appeals or Board of Aldermen, as appropriate . . . ."

[4] Subsequent to the issuance of the commission's report, but prior to final approval, the board of aldermen referred the DelMonaco partnership's application to its legislative committee for further review. The legislative committee held additional public hearings on the application on October 22, 2001, October 30, 2001, and November 27, 2001.

[5] General Statutes § 8-9 provides: "Appeals from zoning commissions and planning and zoning commissions may be taken to the Superior Court and, upon certification for review, to the Appellate Court in the manner provided in section 8-8."

for certification, and ultimately reversed the judgment of the trial court and remanded the case to the trial court with direction to sustain the plaintiffs' appeal. See *Campion* v. *Board of Aldermen*, 85 Conn. App. 820, 853, 859 A.2d 586 (2004). This certified appeal followed.[6]

The underlying facts, as set forth by the Appellate Court, are as follows: "The [DelMonacos] owned approximately 1.727 acres in New Haven, designated as 208 Cove Street. At that site, they operated a catering facility known as Anthony's Oceanview, Inc., as a preexisting nonconforming use. Over the course of several years, the [DelMonaco partnership] purchased several abutting properties. Those abutting properties, located at 30 and 36-50 Morris Cove Road, and 1, 5 and 7 Bristol Place, totaled approximately 2.35 acres.

"In an application dated April 16, 2001, the [DelMonaco] partnership requested the creation of a planned development district that would consolidate all six parcels. The size of the planned development district would be 4.04 acres and would be carved out of the surrounding RS-2 zoning district. In the application, the [DelMonaco] partnership proposed a two phase plan for the implementation of the planned development

General Statutes § 8-8 (o) provides: "There shall be no right to further review except to the Appellate Court by certification for review, on the vote of two judges of the Appellate Court so to certify and under such other rules as the judges of the Appellate Court establish. The procedure on appeal to the Appellate Court shall, except as otherwise provided herein, be in accordance with the procedures provided by rule or law for the appeal of judgments rendered by the Superior Court unless modified by rule of the judges of the Appellate Court."

[6] We granted the board of aldermen's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that there is no source of enabling authority for § 65 of the New Haven zoning ordinance?" *Campion* v. *Board of Aldermen*, 272 Conn. 920, 867 A.2d 837 (2005). Similarly, the DelMonaco partnership and the DelMonacos filed a joint petition with this court for certification to appeal. We granted that petition as well, limited to the same question. *Campion* v. *Board of Aldermen*, 272 Conn. 920, 867 A.2d 837 (2005).

district. During the first phase, certain structures, including the Cove Manor Convalescent Nursing Home (convalescent home), a preexisting, nonconforming use, and three residential structures would be demolished. Furthermore, enlargements and renovations to the catering facility would be completed, including the construction of a new parking facility and a garden reception area. During the second phase, a new residence would be constructed for the DelMonaco family.

"The decision to apply for the planned development district originated from a prior request filed by the [Del-Monaco] partnership for a special exception for permission to expand parking at the catering facility by using the convalescent home parking lot. During that time, the New Haven zoning board of appeals found that the convalescent home had not been abandoned and denied the special exception application. The [DelMonaco] partnership appealed the matter to the Superior Court. By way of a stipulation dated December 15, 2000, the [DelMonaco] partnership and the zoning board of appeals reached an agreement. The stipulation granted the catering business permission to use the convalescent home's parking lot on a temporary basis and required the [DelMonaco] partnership to apply for the creation of a planned development district. The proposed planned development district, if approved, would result in the creation of a new zoning district and an amendment to the zoning map.

"The [commission] held public hearings on the [Del-Monaco] partnership's application on June 13 and July 25, 2001. The plans for the planned development district, as submitted by the [DelMonaco] partnership, included a structure to enclose the garden at the catering facility and the reconfiguration of the existing parking lot. The capacity of the catering facility would be increased from 299 persons to 470 persons with the

addition of a garden pavilion. Additionally, nearly 100 new parking spaces would be created.

"On September 19, 2001, the commission approved the application and imposed certain conditions, including a limitation of the size of the new building, the number of parking spaces, the hours of operation and project phasing. The commission forwarded its report and approval to the board of aldermen. On February 19, 2002, the board of aldermen [approved, but] substantially amended the conditions of approval for the planned development district. Specifically, the board of aldermen made the following amendments: (1) no change to the size of the catering facility was permitted at that time; (2) the number of parking spaces was limited to 199; (3) the maximum occupancy was limited to 299 persons; (4) separate functions in the garden area were prohibited; (5) the 0.67 acres for the DelMonaco family residence was excluded from the planned development district; (6) the permitted hours of operation were established; (7) a five year moratorium was placed on expansion, improvement or modification within the district; and (8) the board of aldermen reserved the right to extend and to review the five year moratorium." Id., 822–25.

By approving the DelMonaco partnership's application subject to the previously identified conditions, the board of aldermen created a new zoning district that amended the New Haven zoning ordinance, as well as the zoning map, to designate the combined parcels of property as a planned development district. As part of its decision to approve the DelMonaco partnership's application, the board of aldermen also made several findings regarding the planned development district, namely, that: (1) it was in accordance with the city's comprehensive plan; (2) it reduced traffic from the catering facility in the surrounding neighborhood; (3) it minimized conflict with the surrounding residential

community; and (4) it was designed in such a way as to meet all the objectives of § 65.A of the New Haven zoning ordinance.

The plaintiffs appealed from the board of aldermen's decision to the trial court, which dismissed the plaintiffs' appeal. The Appellate Court reversed the judgment of the trial court. Id., 822. The Appellate Court first confirmed that approval of a planned development district results in the creation of a new zoning district. Id., 852–53. It specifically concluded, however, that the planned development district process set forth in § 65 of the New Haven zoning ordinance was not authorized by the city's enabling legislation. Id., 853. Furthermore, the Appellate Court determined that the planned development district process was invalid because the standards contained in the New Haven zoning ordinance were too vague and failed to contain uniform standards that could be applied to all planned development district applications, thereby giving the board of aldermen "unlimited and unfettered" discretion with respect to the creation of a planned development district. Id.

The defendants claim that the Appellate Court improperly concluded that there is no source of enabling authority for § 65 of the New Haven zoning ordinance, and that the requirements for a valid planned development district contained in § 65 of the New Haven zoning ordinance are not sufficiently specific to be valid. We agree.

We first note the standard of review that governs this case. The question of whether there is a source of enabling authority for § 65 of the New Haven zoning ordinance is one of law, as it requires an interpretation of certain legislative enactments and city regulations. Consequently, our review is plenary. See *A. Aiudi & Sons, LLC* v. *Planning & Zoning Commission*, 267 Conn. 192, 197, 837 A.2d 748 (2004); *Wood* v. *Zoning*

*Board of Appeals*, 258 Conn. 691, 699, 784 A.2d 354 (2001).

Additionally, "zoning regulations are local legislative enactments and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes. . . . Moreover, regulations must be interpreted in accordance with the principle that a reasonable and rational result was intended . . . ." (Citations omitted.) *Wood* v. *Zoning Board of Appeals*, supra, 258 Conn. 699. "The process of statutory interpretation involves the determination of the meaning of the statutory language [or in this case, the enabling legislation for the city's zoning authority and § 65 of the New Haven zoning ordinance] as applied to the facts of the case, including the question of whether the language does so apply." *School Administrators of Waterbury* v. *Waterbury Financial Planning & Assistance Board*, 276 Conn. 355, 364, 885 A.2d 1219 (2005). In the present case,[7] that process requires us to examine the language of the city's enabling zoning legislation and § 65 of the New Haven zoning ordinance, as well as extratextual sources that provide guidance as to the scope of that zoning authority.

We begin our analysis with a brief discussion of the history of the source of the city's zoning authority. That history makes clear that the city's source of zoning power is a special act passed by the General Assembly in 1925. "Municipalities in Connecticut may exercise

---

[7] We recognize that General Statutes § 1-2z requires that, before we go beyond the text of a statute to determine its meaning, we first must determine that it is not plain and unambiguous. See *Bell Atlantic NYNEX Mobile, Inc.* v. *Commissioner of Revenue Services*, 273 Conn. 240, 250–51 n.13, 869 A.2d 611 (2005). None of the parties contends, however, that the text of the city's enabling legislation or § 65 of the New Haven zoning ordinance is plain and unambiguous as applied to the facts of the present case. We agree. Therefore, we are free to turn to extratextual sources when determining whether enabling authority exists for the board of aldermen to approve planned development districts pursuant to § 65 of the New Haven zoning ordinance.

zoning power either by adopting the provisions of chapter 124 of the General Statutes . . . or by enacting a municipal charter authorized by a special act of the legislature. . . . In either case, the power of the local zoning authority to adopt regulations is limited by the terms of the statute or special act." (Citation omitted; internal quotation marks omitted.) *Smith* v. *Zoning Board of Appeals*, 227 Conn. 71, 81 n.7, 629 A.2d 1089 (1993), cert. denied, 510 U.S. 1164, 114 S. Ct. 1190, 127 L. Ed. 2d 540 (1994); T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 42.

"The power to adopt and administer zoning regulations was conferred by the General Assembly for the first time in [Connecticut] in 1921 by special act applicable only to the city of New Haven. 18 Spec. Laws 1045 [No. 478 (1921)]. Two years later a general statute gave the power to zone to Bridgeport, Norwalk, Waterbury, Stamford, Fairfield, Greenwich, Enfield and West Hartford. Public Acts 1923, c. 279. In 1925 a general enabling act made zoning powers available to cities and towns which chose, by action of their legislative bodies, to exercise such powers. Public Acts 1925, c. 242; see General Statutes [(1930 Rev.) c. 29, § 423 et seq.]. In spite of this early legislation bestowing broad zoning powers upon municipalities, many cities and towns [including New Haven] have sought and obtained zoning powers by special enactments of the General Assembly applicable only to them. Consequently, two bodies of legislation pertaining to zoning have developed over the years: the one, contained in the General Statutes; the other, conferred by special act and relevant only to the particular city or town in whose behalf the legislation was adopted." *Sullivan* v. *Town Council*, 143 Conn. 280, 282, 121 A.2d 630 (1956).

The city's zoning authority, therefore, is derived from a completely separate source of power from which most other municipalities derive zoning power. Specifically,

in 1925, the Connecticut General Assembly passed legislation entitled "An Act Amending an Act Creating Zoning Districts In the City of New Haven"; 19 Spec. Acts 1006, No. 490 (1925) (1925 Special Act); that slightly altered and enhanced the zoning powers granted to the city in 1921. The city subsequently enacted a municipal charter with language that tracks the language of the 1925 Special Act. See New Haven Charter, art. XXXI. Since its enactment and incorporation into the city's municipal charter, the 1925 Special Act[8] has never been

---

[8] Number 490 of the 1925 Special Acts provides in relevant part: "Section 1. The board of aldermen of the city of New Haven is authorized, by ordinance, to regulate the height and bulk of structures to be erected and to limit the use of lot areas; the minimum areas of dimensions of rear, side and front yards or outer and inner courts and other open spaces within and surrounding any structure; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes; to classify, regulate and restrict the location of trades and industries and the location of structures designed for special uses; *to divide the city of New Haven into districts of such number, shape and area as may be best suited to carry out the provisions of this act.* Regulations may be imposed in each district specifying the uses that shall be excluded or subjected to reasonable requirements of a special nature and designating the uses for which buildings may not be erected or altered. *The regulations shall be uniform for each class of buildings or structures throughout any district. Regulations in one or more districts may differ from those in another district.* Such regulations may provide that a board of appeals may determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific rules therein contained.

"Sec. 2. Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the over-crowding of land; to avoid undue concentration of population . . . . Such regulations shall be made with reasonable consideration, as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality.

"Sec. 3. The zoning commission, heretofore appointed by the mayor of the city of New Haven under an act creating zoning districts in the city of New Haven, approved June 24, 1921, is continued in office and is granted the powers and charged with the duties created by this act.

"Sec. 4. The commission shall recommend the boundaries of districts and appropriate regulations and restriction to be enforced therein. Such

amended. To this date, therefore, the authority for zoning in the city is governed by the language incorporated into its municipal charter and approved by the General Assembly by way of the 1925 Special Act.[9]

commission shall make a tentative report and hold a hearing thereon. . . . Within thirty days after the final adjournment of such hearing, the commission shall make a report to the board of aldermen of the city and submit a proposed ordinance in accordance with the provisions of this act. Such proposed ordinance may be, by said board of aldermen, referred to the zoning commission for further consideration. . . .

"Sec. 5. *The regulations imposed and the districts created under the provisions of this act may be changed or altered from time to time by ordinance, but no such change or alteration shall be made until the proposed change shall have been referred to the zoning commission for a hearing.* Said commission shall, upon receipt from the board of aldermen of such proposed change, give notice and proceed with a hearing in the same manner as is herein provided and shall report to said board of aldermen its recommendations in the matter, within thirty days after receipt by it of the proposal for a change. Thereafter the board of aldermen may, by ordinance adopted in the usual manner, make the proposed change. . . . If twenty per centum of the owners of the frontage of the property immediately affected by the proposed amendment or repeal or, if the owners of twenty per centum of the frontage of the rest of the block or blocks affected or the owners of twenty per centum of the frontage directly opposite the property immediately affected by such amendment or repeal, shall, within fifteen days after the filing of the report of said commission, file a protest in writing, signed by them with the city clerk, *such amendment or repeal shall not be adopted unless recommended by the zoning commission or unless three-fourths of the members of the board of aldermen shall vote in favor of such amendment or repeal.*

"Sec. 6. The mayor of the city of New Haven, subject to the approval of the legislative authority, shall appoint a board of zoning appeals, to consist of five members, of whom not more than three may be officials of said city. Any person, claiming to be aggrieved by any order, requirement or decision made by the administrative official charged with the enforcement of any ordinance adopted pursuant to the provisions of this act, may file an appeal in writing from such order, requirement or decision to said board of zoning appeals, which, after due notice to the authority from whose decision said appeal shall be taken, shall hear and determine the legality and reasonableness of such order, requirement or decision. . . . *Said board of zoning appeals may also hear and act upon any other matters for which provision is made in the ordinance. . . .*" (Emphasis added.)

[9] We recognize that there are some limited circumstances in which the legislature has adopted new provisions that are meant to apply to both municipalities that exercise zoning authority under chapter 124 of the Gen-

Section 1 of the 1925 Special Act provides the board of aldermen with the broad power to "divide the city of New Haven into districts of such number, shape and area as may be best suited to carry out the provisions of [the] act. . . . [Additionally, § 1 requires that the zoning] regulations shall be uniform for each class of buildings or structures throughout any district . . . [and that] [r]egulations in one or more districts may differ from those in another district." Furthermore, § 5 of the 1925 Special Act provides that "[t]he regulations imposed and the districts created under the provisions of this act may be changed or altered from time to time by ordinance, but no such change or alteration shall be made until the proposed change shall have been referred to the zoning commission for a hearing . . . [and the commission has reported] to said board of aldermen its recommendations in the matter . . . ."

The approval of a planned development district is not different from the creation of any other new zoning district by the board of aldermen and, therefore, §§ 1 and 5 of the 1925 Special Act provide the city with the necessary enabling authority for § 65 of the New Haven zoning ordinance. Specifically, § 65 allows an applicant to request permission to rezone certain property from its current zoning designation to the proposed new district, and concomitantly seek approval of a planned development consistent with the new zoning district's

eral Statutes, as well as those jurisdictions that derive their authority from a special act. See, e.g., General Statutes § 8-10 (appeals procedure in General Statutes § 8-8 applies to special act municipalities); General Statutes § 8-2c (regulations of special act municipalities may provide payment for fee in lieu of parking requirements); General Statutes § 8-2k (prohibiting zoning regulations under General Statutes § 8-2 or special act from authorizing construction of large structures near lakes). The authority for zoning within the city, as well as the city's decision to approve planned development districts pursuant to the standards set forth in § 65 of the New Haven zoning ordinance, however, are derived solely from the 1925 Special Act.

regulations.[10] In this sense, the relevant question is not whether the 1925 Special Act authorizes "planned development districts" by name, but whether it authorizes the city to create new zones, as well as to make alterations to the zones previously created. We conclude that §§ 1 and 5 of the 1925 Special Act provide this source of authority.

In this respect, the creation of planned development districts pursuant to § 65 of the New Haven zoning ordinance is comparable to the creation of floating zones,[11] which is a practice that we have deemed authorized by enabling legislation similar to the 1925 Special Act. In *Sheridan* v. *Planning Board,* 159 Conn. 1, 17, 266 A.2d 396 (1969), we concluded that floating zones

---

[10] As we discuss briefly later in this opinion, § 65 of the New Haven zoning ordinance governs the creation of both a planned development "district," which this case involves, and of a planned development "unit," which this case does not involve. Specifically, the creation of a planned development "district" is governed by §§ 65.B.2 and 65.D.2 of the New Haven zoning ordinance, and a planned development "unit" is governed by §§ 65.B.1 and 65.D.1. See footnote 3 of this opinion.

[11] "A floating zone is a special detailed use district of undetermined location in which the proposed kind, size and form of structures must be preapproved. It is legislatively predeemed compatible with the area in which it eventually locates if specified standards are met and the particular application is not unreasonable. . . . It differs from the traditional Euclidean zone in that it has no defined boundaries and is said to float over the entire area where it may eventually be established. . . . The legality of this type of zoning, when properly applied, has been recognized by this court." (Citations omitted; internal quotation marks omitted.) *Schwartz* v. *Plan & Zoning Commission,* 168 Conn. 20, 22, 357 A.2d 495 (1975). Additionally, our courts have noted that "[w]hile the concept of a floating zone is similar to the established power of a zoning board to grant special exceptions, the two types of regulation may be distinguished. The special exception is the product of administrative action, while the floating zone is the product of legislative action. . . . Further, if a landowner meets the conditions set forth for a special exception, the board is bound to grant one, but in the case of a floating zone discretion is maintained and additional limitations may be imposed—more control is retained by the zoning board because it is acting legislatively." (Internal quotation marks omitted.) *Homart Development Co.* v. *Planning & Zoning Commission,* 26 Conn. App. 212, 215–16, 600 A.2d 13 (1991).

were authorized under the special act conferring zoning authority on the city of Stamford even though the term "floating zone" was not specifically mentioned in the special act. Specifically, pursuant to a 1953 Special Act; 26 Spec. Acts 1234, No. 619, § 550 (1953) (Stamford Special Act); Stamford's zoning board was granted the authority to regulate the "height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes; and the height, size, location and character of advertising signs and billboards." (Internal quotation marks omitted.) *Sheridan* v. *Planning Board*, supra, 17–18. On the basis of this enabling language, we concluded that Stamford's floating zone regulation was valid. We stated: "We feel that this language, just as that in General Statutes § 8-2, is sufficiently broad to permit the creation of floating zones. In creating a floating zone, and in applying it to a particular area, the Stamford zoning board is regulating the location and use of buildings and land in a manner which clearly is permitted under the enabling act in question." Id., 18.

In searching for enabling authority for Stamford's floating zone regulation, our analysis in *Sheridan* centered on the substance and function of the regulation as it related to the broad authority conferred by the relevant special act.[12] We also note certain characteris-

---

[12] We have adopted a similar analysis in the context of other cases that involved the review of decisions of a municipality governed by a special act, approving the creation of new zoning districts. See, e.g., *Stiles* v. *Town Council*, 159 Conn. 212, 214, 268 A.2d 395 (1970) (request to rezone property as "Special Development District" zone within broad authority of zoning regulations and properly accompanied by map amendment and general development plan for area in question); *Clark* v. *Town Council*, 145 Conn. 476, 485–86, 144 A.2d 327 (1958) (classification of rezoned commercial property as "special use district" deemed to fall within authority of town council to "amend, change or repeal regulations and zone boundaries and to provide the manner in which these things shall be done," and to be "constitutionally

tics specific to Stamford's floating zone regulation that bear similarities to the city's use of planned development districts pursuant to § 65 of the New Haven zoning ordinance. Specifically, in *Sheridan* we stated that, "[u]nlike the special exception, when a zoning board grants an application requesting it to apply a floating zone to a particular property, *it alters the zone boundaries of the area by carving a new zone out of an existing one.* . . . This legislative function meets the *need for flexibility in modern zoning ordinances* since the exact location of the new zone is left for future determination, as the demand develops, and applications are granted which meet all conditions specified by the board."[13] (Citations omitted; emphasis added.) Id., 17.

In sum, like a floating zone, a planned development district "alters the zone boundaries of the area by carv-

valid and within the power conferred by special legislation pertaining to zoning in West Hartford").

[13] The facts of the present case are especially illustrative of why flexible regulations such as § 65 of the New Haven zoning ordinance are necessary in order for a municipality to meet the challenges of modern zoning and land use. As an urban environment, the city has a relatively small amount of land that has not already been developed in one capacity or another. In the absence of a flexible ordinance such as § 65, therefore, as authorized by the provisions of the 1925 Special Act, the city would be handicapped in its ability to deal with issues of adaptive reuse of land and to reconcile or blend different uses together into harmonious neighborhoods. In its recommendation to the board of aldermen, the commission aptly summarized this need as follows: "Creation of a 4.04 acre waterfront [p]lanned [d]evelopment [d]istrict recognizes [the] historic growth and use pattern [of the Morris Cove area], as well as the limited access for the public to coastal sites and views. It acknowledges the juxtaposition of a place of assembly within a now predominantly residential area and gives the [c]ommission and [b]oard of [a]ldermen the means to require high quality physical design, adequate screening and buffering of adjacent residences, and operational limitations to ensure the best possible chance for peaceful co-existence and preservation of property values. A [p]lanned [d]evelopment [d]istrict . . . is necessary because [the] existing [catering] facility is a nonconforming use that is 'grandfathered.' The facility cannot be expanded by variance, even to remedy the shortage of parking."

ing a new zone out of an existing one," and, consequently, represents a legitimate legislative act by the city to regulate growth and meet the "need for flexibility in modern zoning ordinances . . . ." Id. Similar to our conclusion in *Sheridan* with respect to the permissibility of floating zones, therefore, we conclude that the language of the 1925 Special Act is sufficiently broad to permit the creation of planned development districts pursuant to § 65 of the New Haven zoning ordinance.

The plaintiffs argue that planned development districts are different from floating zones because a planned development district does not contain particular types of uses, with identified specifications, that have been preapproved for placement on particular properties at a later date. We are not persuaded.

First, we acknowledge that a floating zone differs from a planned development district in certain respects. We conclude, however, that these differences are largely procedural in nature and are not significant enough to invalidate planned development districts that derive their authority from the city's 1925 Special Act. For example, a floating zone is approved in two discrete steps—first, the zone is created in the form of a text amendment, but without connection to a particular parcel of property—and second, the zone is later landed on a particular property through a zoning map amendment. In short, with respect to floating zones, development plans for specific properties within a district are approved separately from the zoning map amendment. Planned development districts established pursuant to § 65 of the New Haven zoning ordinance, however, combine into a single step the approval of a zoning map amendment and a general development plan for the district. This procedural discrepancy does not change the fact that both floating zones and planned development districts have the effect of "alter[ing] the zone

boundaries of [an] area by carving a new zone out of an existing one." Id.

Additionally, the fact that a floating zone has established standards for the kind, size and form of the structures eventually to be applied to a particular area, while § 65 of the New Haven zoning ordinance does not contain uniform and identified standards that would apply to each planned development district, does not warrant different treatment when searching for enabling authority in the 1925 Special Act. By definition, a floating zone does not apply to a specific piece of property. *River Bend Associates, Inc.* v. *Zoning Commission*, 271 Conn. 1, 30 n.20, 856 A.2d 973 (2004). Indeed, it has been described as "another device to allow individual treatment of properties. . . . Since the floating zone regulations establish a zone for a type of use with an undetermined location, the zone can technically be applied anywhere in the municipality. It can result in individual preferences and respond to development pressures rather than considering the best area for location of particular uses." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 3.8, pp. 32–33. Furthermore, a "floating zone is normally used to benefit a single landowner" and "[i]t is this potential for favoritism that is the real issue raised by the device." T. Tondro, supra, p. 72.

Despite these concerns, which are still present even though floating zones contain preapproved specifications for the use of land, we concluded that floating zones were authorized by the broad language in the Stamford Special Act, and we approved the enhanced discretion that they give to municipal zoning boards due to a recognized need for flexibility in modern zoning practices. See *Sheridan* v. *Planning Board*, supra, 159 Conn. 17. The same concerns are present with respect to planned development districts. Such concerns do not change the fact, however, that the 1925 Special Act

contains similarly broad language that authorizes the board of aldermen to create new zoning districts and make alterations to existing districts. Accordingly, in searching for the required enabling authority in the 1925 Special Act, we view § 65 of the New Haven zoning ordinance in the same manner and provide the same treatment as a floating zone.

The plaintiffs also contend that § 65 of the New Haven zoning ordinance is not authorized by the 1925 Special Act because it takes power away from the board of zoning appeals and the board of aldermen, and improperly gives it to the commission. Specifically, the plaintiffs claim that § 65 bestows the commission with authority beyond its traditional function of implementing the zoning regulations because a favorable recommendation by the commission is a condition precedent to the board of aldermen's ability to approve a planned development district application. We disagree.

The language of § 5 of the 1925 Special Act is particularly instructive. Section 5 of the 1925 Special Act provides in relevant part: "The regulations imposed and the districts created under the provisions of this act may be changed or altered from time to time by ordinance, but no such change or alteration shall be made until the proposed change shall have been referred to the zoning commission for a hearing. *Said commission shall, upon receipt from the board of aldermen of such proposed change, give notice and proceed with a hearing in the same manner as is herein provided and shall report to said board of aldermen its recommendations in the matter*, within thirty days after receipt by it of the proposal for a change. Thereafter the board of aldermen may, by ordinance adopted in the usual manner, make the proposed change. . . ."[14] (Emphasis

[14] A *favorable* recommendation by the commission is not a prerequisite to action by the board of aldermen.

added.) Additionally, if the community affected by the proposed amendment objects in writing in a timely manner by filing a protest petition, § 5 of the 1925 Special Act provides that "such amendment or repeal shall not be adopted unless recommended by the zoning commission or unless three-fourths of the members of the board of aldermen shall vote in favor of such amendment or repeal." In the face of a protest petition from the local community, therefore, the 1925 Special Act prohibits the board of aldermen from acting on a proposed amendment until it has received the commission's recommendation, but also gives the board of aldermen the power to override, by a supermajority vote, an unfavorable commission recommendation.

Furthermore, § 65.D.2 of the New Haven zoning ordinance provides that "[i]f such application [for a planned development district] and General Plans are approved by the Board of Aldermen, following a favorable recommendation by the City Plan Commission . . . such approval shall be construed to amend this ordinance . . . ." We do not construe § 65.D.2 as mandating that the board of aldermen approve all applications that receive a favorable recommendation from the commission, nor do we read the ordinance as preventing the board of aldermen from modifying the conditions of the commission's recommendation as part of its final decision. Indeed, that is precisely what occurred in this case. Moreover, in light of the override power contained in § 5 of the 1925 Special Act, § 65.D.2 of the New Haven zoning ordinance does not designate the commission as the agency with final decision-making power. We construe § 65.D.2, therefore, as merely acknowledging that the 1925 Special Act establishes the commission as the agency that must make a recommendation prior to the board of aldermen's final decision on an application for a new zone or zone amendment.

The plaintiff's argument that § 65 improperly delegates the power of the New Haven board of zoning appeals is equally without merit. Section 6 of the 1925 Special Act provides the board of zoning appeals with the authority to hear and decide appeals from "any order, requirement or decision made by the administrative official charged with the enforcement of any ordinance adopted pursuant to the provisions of this act . . . ." Section 6 further provides that "[s]aid board of zoning appeals may also hear and act upon any other matters for which provision is made in the ordinance." Pursuant to this language, § 61.B of the New Haven zoning ordinance describes the board of zoning appeal's role as follows: "The Board of Zoning Appeals hears and decides cases in which it is claimed either that some ruling of the zoning enforcement officer was in error, or that special circumstances require a *variance* from the strict terms of the ordinance, or that certain privileges are justified as *special exceptions*." (Emphasis added.)

Thus, pursuant to the 1925 Special Act and § 61.B of the New Haven zoning ordinance, § 65.D assigns certain responsibilities to the board of zoning appeals, and other responsibilities directly to the board of aldermen. Specifically, § 65.D.1 of the New Haven zoning ordinance requires that the board of zoning appeals act on each application for a planned development *unit—as opposed to a planned development district*—because an application for a planned development unit is considered an application for a special exception under the ordinance. See footnote 3 of this opinion. Conversely, § 65.D.2 of the New Haven zoning ordinance requires that the board of aldermen review an application for a planned development district because such an application involves a proposed amendment to the zoning ordinance and the creation of a new zone, which as a legislative act is the board of aldermen's responsibility.

Consequently, we construe § 65 of the New Haven zoning ordinance as delegating separate authority to the board of aldermen and the board of zoning appeals just as is contemplated by the 1925 Special Act. In short, it never was anticipated that the board of zoning appeals would hear and decide the merits of planned development district applications. The 1925 Special Act provides the board of aldermen with the authority to amend a zoning ordinance, and a planned development district does not implicate a special exception or a variance, which, pursuant to § 61.B of the New Haven zoning ordinance, are the two subject matters that are the domain of the board of zoning appeals.

The plaintiffs next contend that, due to the fact that the DelMonaco partnership's planned development district application pertains to the individual requirements of one property owner, the uniformity requirements of the 1925 Special Act have somehow not been complied with. We disagree.

Section 1 of the 1925 Special Act requires that "[zoning] regulations shall be uniform for each class of buildings or structures throughout any district . . . [and that] [r]egulations in one or more districts may differ from those in another district. . . ." As discussed previously, we confronted a similar issue in *Sheridan* v. *Planning Board*, supra, 159 Conn. 17, wherein we concluded that a floating zone did not violate the uniformity requirements of similar enabling legislation because a floating zone "alters the zone boundaries of the area by carving a new zone out of an existing one." Similar to a floating zone, therefore, once a planned development district is approved, the property to which it applies is removed from the existing zoning district and an entirely new zoning district is created. The fact that the application pertains to one individual landowner's parcel of property is irrelevant. In short, rather than requiring uniformity with bordering zoning districts, the

uniformity requirement of the 1925 Special Act requires only that a planned development district be uniform within itself. Section 65 of the New Haven zoning ordinance satisfies this requirement because once the new zoning district is created, the planned development district only incorporates characteristics that are consistent with the new district's regulations.

The plaintiffs further contend that § 65 of the New Haven zoning ordinance lacks sufficient standards in order to be deemed valid and that its provisions are unreasonably vague. Specifically, the plaintiffs argue that a delegation of authority from the legislature to municipalities may be challenged for vagueness on due process grounds if the regulation does not give an individual of ordinary intelligence sufficient notice of what the law is so that the individual has a reasonable opportunity to comply with it. Accordingly, the plaintiffs reason, if a zoning regulation lacks specific standards for its application by an administrative body, it thereby results in an impermissible delegation to that administrative body of the power to decide basic policy matters on a subjective basis. We disagree.

"A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to [them], the [plaintiffs] therefore must . . . demonstrate beyond a reasonable doubt that [they] had inadequate notice of what was prohibited or that [they were] the victim[s] of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English

words and phrases there lurk uncertainties. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." (Internal quotation marks omitted.) *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 672–73, 894 A.2d 285 (2006). We are also mindful that we recently have applied the preceding framework and standards within the context of similar challenges to zoning ordinances. See id., 673.

Section 65 of the New Haven zoning ordinance does not lack adequate standards and is not impermissibly vague. Section 65.A provides in relevant part: "The provisions of this section are to be applied in instances where tracts of land of considerable size are developed, redeveloped or renewed as integrated and harmonious units, and where the overall design of such units is so outstanding as to warrant modification of the standards contained elsewhere in this ordinance. A planned development, to be eligible under this section, must be: 1. in accordance with the comprehensive plans of the City, including all plans for redevelopment and renewal; 2. composed of such uses, and in such proportions, as are most appropriate and necessary for the integrated functioning of the planned development and for the city; [and] 3. so designed in its space allocation, orientation, texture, materials, landscaping and other features as to produce an environment of stable and desirable character, complementing the design and values of the surrounding neighborhood, and showing such unusual merit as to reflect credit upon the developer and upon the city . . . ." Additionally, § 65.B of the New Haven zoning ordinance specifies the minimum area necessary for a planned development district, § 65.C discusses who may file a planned development district application, and § 65.D requires that a traffic impact study be completed. Prior to approval of the planned develop-

ment district application, § 65.D also requires a specific finding, following public hearing, that the objectives outlined in § 65.A have been met. See footnote 3 of this opinion.

These requirements provide adequate notice, both to the individuals requesting the creation of the new zone as well as to the opponents of the planned development district application, of the standards and the procedure utilized by the board of aldermen to evaluate a request for a planned development district. In order to pass constitutional muster, a zoning ordinance need not contain detailed and rigid standards that anticipate every conceivable factual situation. Indeed, we have recognized that detailed standards within a zoning ordinance that may be impractical or impossible to apply are not necessary, and that some flexibility is permitted when one standard cannot be adopted to all situations. See *Nicoli* v. *Planning & Zoning Commission*, 171 Conn. 89, 93, 368 A.2d 24 (1976) ("[a]lthough some of the [regulation's] standards may be general in their terms, they are reasonably sufficient to identify the criteria to be evaluated in their enforcement in order to meet the many variables involved since it would be impossible to establish one standard which would adequately cover all future cases"); 9 R. Fuller, Connecticut Practice Series: Land Use Law and Practice (1993) § 10.12, p. 184.

Second, as we already have discussed, the approval of a planned development district creates a new zoning district, and like any other adoption of a new zone, is legislative in nature and must be enacted by the board of aldermen. Conversely, when a legislative body delegates authority to an administrative agency, that agency must be given specific guidance as to the standards for its decision. See *Sonn* v. *Planning Commission*, 172 Conn. 156, 159, 374 A.2d 159 (1976).

We previously have discussed at length the implications associated with a zoning authority carrying out a

legislative act. "Acting in such legislative capacity, the local board is free to amend its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change. . . . The discretion of a legislative body, because of its constituted role as formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function. . . . This legislative discretion is wide and liberal, and must not be disturbed by the courts unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally. . . . Zoning must be sufficiently flexible to meet the demands of increased population and evolutionary changes in such fields as architecture, transportation, and redevelopment. . . . The responsibility for meeting these demands rests, under our law, with the reasoned discretion of each municipality acting through its duly authorized zoning commission. Courts will not interfere with these local legislative decisions unless the action taken is clearly contrary to law or in abuse of discretion. . . . Within these broad parameters, [t]he test of the [legislative] action of the commission is twofold: (1) The zone change must be in accord with a comprehensive plan . . . and (2) it must be reasonably related to the normal police power purposes enumerated in [the city's enabling legislation] . . . ." (Citations omitted; internal quotation marks omitted.) *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, 220 Conn. 527, 543–44, 600 A.2d 757 (1991).

This well established case law provides the necessary standards for a court to analyze whether, as a legislative act, the adoption of a new planned development district pursuant to § 65 of the New Haven zoning ordinance was within the authority granted by the 1925 Special Act. The plaintiffs do not challenge the board of alder-

men's determination that the planned development district is consistent with the city's comprehensive plan and furthers the city's police powers. In particular, after extensive public hearings before both the commission and the board of aldermen, the board of aldermen made the following findings: "The proposed commercial development and single family home are in accordance with the comprehensive plans of the [c]ity in that it reuses a previously developed waterfront site in a manner that removes traffic from side streets, fully accommodates the parking needs of the catering facility on its site, creates a viable commercial compound in a manner that minimizes conflicts with the surrounding residential community, and eliminates the non conforming Cove Manor nursing home use in favor of [a] landscaped parking area and [a] single family home. . . . The design provides buffers for the existing adjacent residential development in accordance with the objectives of [§] 65.A. of the [New Haven] [z]oning [o]rdinance . . . . The design, quality of materials and site development are consistent with the letter and intent of [§] 65 of the [New Haven] [z]oning [o]rdinance . . . ."

Additionally, the record discloses that the commission favorably recommended the planned development district and the board of aldermen critically had examined the commission's report, requiring substantial amendments before final approval. We also note that, pursuant to § 65, specific standards are required for the approval of a new planned development district, including a traffic analysis, the submission of a general plan, multiple public hearings, and the submission of a detailed plan approved by the commission and the board of aldermen. All of these requirements were complied with in this case.

Moreover, § 65 of the New Haven zoning ordinance is not a delegation of authority from a legislative body to an administrative agency. It is not necessary, therefore,

that detailed standards for the enactment of zone changes or new zoning districts be set forth in the zoning ordinance itself, because such an evaluation is already contemplated by our precedent establishing that a legislative action must be in accord with the city's comprehensive plan and reasonably related to the police powers enumerated in the city's enabling legislation. See *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, supra, 220 Conn. 543–44.

The plaintiffs also contend that § 65 of the New Haven zoning ordinance improperly breaks from the Euclidean zoning model approved by the United States Supreme Court in *Euclid* v. *Ambler Realty Co.*, 272 U.S. 365, 47 S. Ct. 114, 71 L. Ed. 303 (1926), and that, as a product of the same era, the 1925 Special Act fails to provide the required enabling authority for the ordinance. This argument is without merit.

"Zoning is concerned with dimensions and uses of land or structures . . . . Euclidean zoning is a fairly static and rigid form of zoning . . . . The term Euclidean zoning describes the early zoning concept of separating incompatible land uses through the establishment of fixed legislative rules . . . . Euclid-[e]an zoning is designed to achieve stability in land use planning and zoning and to be a comparatively inflexible, self-executing mechanism which, once in place, allows for little modification beyond self-contained procedures for predetermined exceptions or variances." (Citations omitted; internal quotation marks omitted.) *Mayor & Council of Rockville* v. *Rylyns Enterprises, Inc.*, 372 Md. 514, 533–34, 814 A.2d 469 (2002). We disagree with the plaintiffs' application of such a rigid standard in evaluating § 65 of the New Haven zoning ordinance and the 1925 Special Act. Furthermore, we never have held, and we decline to do so

now, that zoning ordinances must be judged by the standards of traditional Euclidean zoning.

To the contrary, in the context of a floating zone regulation, we specifically concluded that "zoning by district is not required . . . and that the board is not limited to the traditional 'Euclidean' type of zoning." *Sheridan* v. *Planning Board,* supra, 159 Conn. 21. Additionally, we have noted that "[z]oning must be sufficiently flexible to meet the demands of increased population and evolutionary changes in such fields as architecture, transportation, and redevelopment. . . . The responsibility for meeting these demands rests, under our law, with the reasoned discretion of each municipality acting through its duly authorized zoning commission. Courts will not interfere with these local legislative decisions unless the action taken is clearly contrary to law or in abuse of discretion." (Citations omitted; internal quotation marks omitted.) *Harris* v. *Zoning Commission,* 259 Conn. 402, 417, 788 A.2d 1239 (2002).

Finally, the plaintiffs argue that § 65 of the New Haven zoning ordinance provides the commission and the board of aldermen with unlimited discretion as to what to allow as a planned development district, resulting in impermissible spot zoning[15] and contract zoning.[16] We disagree.

---

[15] The term "spot zoning" refers to a circumstance where a zone change is implemented on a small area of land and is out of harmony with the municipality's comprehensive plan. *Blaker* v. *Plan & Zoning Commission,* 212 Conn. 471, 483, 562 A.2d 1093 (1989). In short, "[t]he vice of spot zoning lies in the fact that it singles out for special treatment a lot or small area in a way that does not further such a [comprehensive] plan" for the community as a whole. (Internal quotation marks omitted.) T. Tondro, supra, p. 69, quoting *Bartram* v. *Zoning Commission,* 136 Conn. 89, 94, 68 A.2d 308 (1949).

[16] The term " 'contract zoning' " refers to a circumstance where "an agreement is entered between the ultimate zoning authority and the zoning applicant/property owner which purports to determine contractually how the property in question will be zoned, in derogation of the legal prerequisites for the grant of the desired zone. Absent valid legislative authorization, it

Section 65 of the New Haven zoning ordinance does not confer unlimited discretion to the commission and the board of aldermen. Indeed, "[t]he discretion of a legislative body, because of its constituted role as formulator of public policy, is much broader than that of [a zoning board acting in an administrative capacity] . . . ." (Internal quotation marks omitted.) Id., 416. As noted previously, however, the board of aldermen's discretion is still subject to well established checks on its ability to take legislative acts, namely, judicial review on a case-by-case basis as to whether: (1) the action is in accord with the city's comprehensive plan; and (2) the action is reasonably related to the normal police power purposes enumerated in the 1925 Special Act. See *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* supra, 220 Conn. 543–44. Both of these standards were met in the present case.

These same standards also place a check on the city's ability to engage in spot zoning or contract zoning. The record simply does not support the plaintiffs' allegations that the board of aldermen utilized such mechanisms when reviewing the DelMonaco partnership's application. In particular, spot zoning requires a change in zone that affects a small area and is out of harmony with the municipality's comprehensive plan. See *Blaker* v. *Plan & Zoning Commission,* 212 Conn. 471, 483, 562 A.2d 1093 (1989). We previously have concluded that a parcel of land as small as 2.5 acres was not so small that it properly could not be considered a separate zone. See *Kutcher* v. *Town Planning Commission,* 138 Conn.

---

is impermissible because it allows a property owner to obtain a special privilege not available to others . . . disrupts the comprehensive nature of the zoning plan, and, most importantly, impermissibly derogates the exercise of the municipality's powers." (Citations omitted.) *Mayor & Council of Rockville* v. *Rylyns Enterprises, Inc.,* supra, 372 Md. 547. Contract zoning is another individualized technique for the zoning of property that is not permitted in Connecticut. T. Tondro, supra, p. 77.

705, 710, 88 A.2d 538 (1952). The DelMonaco partnership's application for a planned development district pertains to a parcel that is more than four acres in size. Furthermore, in the present case the board of aldermen specifically concluded that the new zone was in conformance with the city's comprehensive plan and that the planned development district would benefit the community as a whole. "The courts must be cautious about disturbing the decisions of a local legislative zoning body familiar with the circumstances of community concern . . . ." *Spada* v. *Planning & Zoning Commission*, 159 Conn. 192, 199, 268 A.2d 376 (1970).

Similarly, with respect to contract zoning, the principal concern is that, by individually contracting with a zoning authority, an applicant may be able to gain some favor not available to all other applicants and, therefore, bypass the municipality's established process for gaining approval for a change in zone. The plaintiffs suggest that, as applied in this case, § 65 of the New Haven zoning ordinance facilitated contract zoning because the DelMonaco partnership and the board of zoning appeals had entered into a stipulation to settle a zoning appeal involving a request for a special exception to expand parking at the catering facility, with the understanding that a planned development district application subsequently would be filed. The implication that there was some type of nefarious connection between the settlement of the DelMonaco partnership's zoning appeal, with its decision to file an application for a planned development district, ignores the facts that the application was subject to a total of five public hearings before the commission and the board of aldermen, that the commission issued a detailed report with its recommendations, and that the commission's report imposed several conditions for approval of the application. Additionally, the board of aldermen properly considered and made further modifications to the commission's

recommendation before approving the application and also made all of the findings required by § 65 of the New Haven zoning ordinance. In short, rather than suggesting any impropriety or that the DelMonaco partnership obtained special privilege not available to others, the record reflects that all of the usual procedures required to create a new zone pursuant to § 65 were followed as part of the DelMonaco's application process.

The plaintiffs repeatedly have insinuated, both in their brief and at oral argument before this court, that the board of aldermen's granting of the DelMonaco partnership's application for a planned development district was the result of political lobbying, improper negotiation, and corruption that allowed the partnership to curry favor with the city's legislative body. There is no support for these allegations in the record. The mere possibility that § 65 of the New Haven zoning ordinance could be misused in a particular case does not mean, in the absence of any evidence to the contrary, that it was misused in this case, or that authority for the ordinance is not present in the city's enabling legislation. The plaintiffs' claim is based on nothing more than unsupported conjecture and innuendo.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.